---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

DANIEL J. STERMER, as Creditor Trustee,

*Appellant*,

v.

OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY, OLD REPUBLIC NATIONAL TITLE HOLDING
COMPANY, OLD REPUBLIC TITLE COMPANIES, INC., and
ATTORNEYS' TITLE FUND SERVICES, LLC,

*Appellees*.

Appeal from the United States District Court
for the Middle District of Florida
D. Ct. No. 2:21-cv-950-JLB
Bankr. No. 2:17-bk-1712-FMD
Adv. Pro. No. 2:18-ap-531-FMD

---

## APPELLEES' OPENING BRIEF

---

Marie Tomassi, Esq., (FBN 772062)
mtomassi@trenam.com
Lara Roeske Fernandez, Esq. (FBN 88500)
lfernandez@trenam.com
Rhys P. Leonard, Esq. (FBN 59176)
rleonard@trenam.com
Trenam Law
101 E Kennedy Boulevard, Ste. 2700
Tampa, FL 33602
Tel: (813) 223-7474

Ryan T. Schultz, Esq., (IBN 6288585)
rschultz@foxswibel.com
Ashley K. Martin, Esq., (IBN 6297126)
amartin@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W Madison Street, Ste. 3000
Chicago, IL 60606
Tel: (312) 224-1231

Attorneys for Old Republic National
Title Holding Company, Old Republic
National Title Insurance Company,
Attorneys' Title Fund Services, LLC and
Old Republic Title Companies, Inc.

## CERTIFICATE OF INTERESTED PERSONS

Appellees Old Republic National Title Holding Company, Old Republic National Title Insurance Company, Old Republic Title Companies, Inc., and Attorneys' Title Fund Services, LLC, pursuant to Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1 – 26.1-3, disclose the following as a complete list of all persons and entities known to Appellees to have an interest in the outcome of this appeal:

Anderson, Margaret M. (counsel for Appellees)

ATIF, Inc. (Debtor)

Attorneys' Title Fund Services, LLC (Appellee)

Attorneys' Title Insurance Fund (Debtor's Parent)

Badalamenti, The Honorable John Leonard (Middle District of Florida District Court Judge)

Becker & Poliakoff, P.A. (counsel for Appellant)

Delano, The Honorable Caryl E. (Middle District of Florida Chief Bankruptcy Judge)

Fernandez, Lara Roeske (counsel for Appellees)

Fox Swibel Levin & Carroll LLP (counsel for Appellees)

Goldman, Darren (counsel for Appellant)

Goldsmith, John (counsel for Appellees)

Leonard, Rhys P. (counsel for Appellees)

Martin, Ashley K. (counsel for Appellees)

Old Republic International Corporation (ORI) (Parent Company of Appellees)

Old Republic National Title Holding Company (Appellee)

Old Republic National Title Insurance Company (Appellee)

Old Republic Title Companies, Inc. (Appellee)

Polenberg, Jon (counsel for Appellant)

Schultz, Ryan M. (counsel for Appellees)

Stermer, Daniel J., as Creditor Trustee (Appellant)

Tomassi, Marie (counsel for Appellees)

Trenam Law (counsel for Appellees)

Any other persons or entities on Appellant's Certificate of Interested Persons

**STATEMENT REGARDING ORAL ARGUMENT**

Appellees assert that the Appeal may be resolved without oral argument, but if the Court believes oral argument would help, Appellees have no objection.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................... C1-2, C2-2

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ....................................................................... v

PREFACE REGARDING RECORD CITATIONS & DEFINED TERMS ..... xi

STATEMENT OF THE ISSUES AND APPLICABLE STANDARDS OF REVIEW .......................................................... 1

STATEMENT OF THE CASE .................................................................. 3

    A.     Factual Background ........................................................................ 3

          1.     Debtor and OR Holding Form ATF Services .......................... 3

          2.     OR Title Reinsures Debtor's Policy Liability. ....................... 6

    B.     Procedural History ........................................................................ 7

          1.     Pfeiffer ................................................................................. 9

          2.     Rule 15(b) Motion ............................................................... 10

SUMMARY OF THE ARGUMENT .................................................... 11

ARGUMENT ...................................................................................... 15

I.     Summary Judgment to OR Title on the Fraudulent Transfer Claims Was Proper.  (Issue On Appeal Nos. 1-4) .......................................... 15

    A.     Appellant Failed to Prove Lack of Reasonably Equivalent Value. (Issue On Appeal No. 1) ............................................................... 15

          1.     Pfeiffer's Opinion Did Not Satisfy FRE 702 ....................... 16

          2.     Appellant Failed to Establish the Value of Debtor's Intangible Assets. ................................................................. 23

**B.** **Appellant Had the Burden to Prove Value.  (Issue On Appeal No. 2)** ..........................................................................**25**

**C.** **Appellant's Rule 15(b) Motion Was Properly Denied.  (Issue On Appeal No. 3)** ...............................................................**27**

    **1.** **The Master Agreement Was Not a Fraudulent Transfer.** ..**28**

    **2.** **Marks Assignment Is Not Avoidable.** ...................................**29**

    **3.** **The Proposed Claim Is Time-Barred.** ...................................**31**

**D.** **Summary Judgment for Appellees on the Actual Fraudulent Transfer Claims Was Proper.  (Issue On Appeal No. 4)** ...............**34**

    **1.** **The Finding That Three Badges Exist Does Not Preclude a Finding That Debtor Lacked Fraudulent Intent.** ................**35**

    **2.** **The Undisputed Facts Show No Concealment, No Insiders, and Reasonably Equivalent Value.** ........................................**36**

    **3.** **The Undisputed Facts Show the Master Agreement Transfer Had a Legitimate Purpose.** .......................................................**44**

    **4.** **The Crime-Fraud Ruling Is Irrelevant.** ................................**46**

**II.** **Summary Judgment to OR Holding, OR Companies, and ATF Services on the Claims for Successor Liability and Alter-Ego Was Proper.** ........**47**

**A.** **Summary Judgment for Appellees on Successor Liability Was Proper.  (Issue On Appeal No. 5)** .....................................................**48**

    **1.** **No *De Facto* Merger.** ...............................................................**48**

    **2.** **No Mere Continuation.** ............................................................**53**

**B.** **Summary Judgment for Appellees on the Alter-Ego Claim Was Proper.  (Issue On Appeal No. 6)** .....................................................**54**

    **1.** **No Improper Use of Corporate Form.** ..................................**55**

    **2.** **Debtor's Creditors Were Not Injured** ..................................**58**

**CONCLUSION** ...........................................................................................**61**

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**...62

**CERTIFICATE OF SERVICE** ..............................................................**63**

# TABLE OF AUTHORITIES

**Cases**                                                  **Page(s)**

*Amjad Munim, M.D., P.A. v. Azar*,
  648 So. 2d 145 (Fla. 4th DCA 1994) ........................................................... 50, 52

*Arnold Rogers v. City of Orlando, Fla.*,
  660 Fed. Appx. 819 (11th Cir. 2016) .......................................................... 29

*Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*,
  565 F.3d 769 (10th Cir. 2009) ..................................................................... 17

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) .................................................................... 23

*Bernard v. Kee Mfg. Co., Inc.*,
  409 So. 2d 1047 (Fla. 1982) ......................................................................... 48

*Celebrity Cruises, Inc. v. Essef Corp.*,
  434 F.Supp.2d 169 (S.D.N.Y. 2006) ............................................................ 22

*Coral Windows Bahamas, LTD v. Pande Pane, LLC*,
  2013 WL 321584 (S.D. Fla. Jan. 28, 2013) ................................................. 53, 54

*CSMC 2007-C4 Egizii Portfolio LLC v. Springfield Prairie Props, LLC*,
  2019 WL 4131706 (C.D. Ill. Aug. 30, 2019) ............................................... 28

*Est. of Stuller v. United States*,
  811 F.3d 890 (7th Cir. 2016) ........................................................................ 17

*F.D.I.C. v. Barton*,
  96 F.3d 128 (5th Cir. 1996) .......................................................................... 31

*F.D.I.C. v. Cameron*,
  986 F.Supp.2d 1337 (N.D. Ga. 2013) ......................................................... 32

*F.D.I.C. v. Coleman*,
  2015 WL 476234 (D. Idaho Feb. 5. 2015) .................................................. 32

*F.D.I.C. v. McSweeney*,
  976 F.2d 532 (9th Cir.1992) ......................................................................... 33

*F.D.I.C. v. RBS Securities Inc.*,
    798 F.3d 244 (5th Cir. 2015)..................................................................32

*Fed. Deposit Ins.Corp. v. Copenhaver*,
    2014 WL 12621202 (M.D. Fla. May 10, 2014)..................................33

*Fed. Deposit Ins. Corp. v. Mangano*,
    2014 WL 12621581 (M.D. Fla. June 4, 2014)....................................33

*Florio v. Manitex Skycrane, LLC*,
    2010 WL 5137626 (M.D. Fla. Dec. 10, 2010)............................ 48, 49

*Gary Brown & Assoc., Inc. v. Ashdon, Inc.*,
    2006 WL 8435164 (S.D. Fla. Mar. 14, 2006)........................ 49, 50, 54

*Harbaugh v. Greslin*,
    436 F.Supp.2d 1315 (S.D. Fla. 2006) ...............................................60

*In re 3dfx Interactive, Inc.*,
    389 B.R. 842 (N.D. Cal. 2008) ..........................................................22

*In re Advanced Telecomm. Network, Inc.*,
    321 B.R. 308 (Bankr. M.D. Fla. 2005) ..............................................38

*In re Berkman*,
    517 B.R. 288 (Bankr. M.D. Fla. 2014) ....................................... 29, 34

*In re Bos*,
    561 B.R. 868 (Bankr. N.D. Fla. 2016)...............................................40

*In re Bull*,
    528 B.R. 473 (M.D. Fla. 2015) ................................................... 55, 59

*In re Chase and Sanborn Corp.*,
    904 F.2d 588 (11th Cir. 1990) ............................................... 1, 25, 26

*In re Dealers Agency Sers., Inc.*,
    380 B.R. 608 (Bankr. M.D. Fla. 2007) ..............................................26

*In re Direct Access Partners, LLC*,
    602 B.R. 495 (Bankr. S.D.N.Y. 2019)...............................................30

*In re Earle*,
307 B.R. 276 (Bankr. S.D. Ala. 2002) ............................................................ 29, 44

*In re Fla. Fund of Coral Gables, Ltd.*,
144 Fed. Appx. 72 (11th Cir. 2005) ............................................................... 41, 42

*In re Fundamental Long Term Care, Inc.*,
507 B.R. 359 (Bankr. M.D. Fla. 2014) .......................................................... 55, 56

*In re Hanson*,
373 B.R. 522 (Bankr. N.D. Ohio 2007) ...............................................................44

*In re Hirshauer*,
2011 WL 1135100 (M.D. Fla. March 28, 2011).....................................................30

*In re Homelands of DeLeon Springs, Inc.*,
190 B.R. 666 (Bankr. M.D. Fla. 1995) .................................................................54

*In re Jennings*,
332 B.R. 465 (Bankr. M.D. Fla. 2005) .................................................................36

*In re KCMVNO, Inc.*,
2010 WL 4064832 (Bankr. D. Del. Oct 15, 2010) ...............................................40

*In re Kipnis*,
555 B.R. 877 (Bankr. S.D. Fla. 2016)...................................................................33

*In re Knight*,
473 B.R. 847 (Bankr. N.D. Ga. 2012) ..................................................................26

*In re N. Am. Clearing, Inc.*,
2014 WL 4956848 (Bankr. M.D. Fla. Sept. 29, 2014) .........................................35

*In re Paul C. Larsen, P.A.*,
610 B.R. 684 (Bankr. M.D. Fla. 2019) ................................................... 55, 57, 60

*In re Paul C. Larsen, P.A.*,
626 B.R. 446 (M.D. Fla. 2021) .............................................................................55

*In re Rollaguard Sec., LLC*,
570 B.R. 859 (Bankr. S.D. Fla. 2017)...................................................................35

*In re Schohl*,
  2006 WL 753096 (N.D. Ohio Mar. 22, 2006) ........................................ 35, 44, 45

*In re Sherman*,
  67 F.3d 1348 (8th Cir. 1995)..................................................................36

*In re Stewart*,
  280 B.R. 268 (Bankr. M.D. Fla. 2001) ..................................................... 30, 34, 44

*In re Teltronics, Inc.*,
  540 B.R. 481 (Bankr. M.D. Fla. 2015) ..............................................26

*In re Toy King Distributors, Inc.*,
  256 B.R. 1 (Bankr. M.D. Fla. 2000) ........................................................ 36, 39

*In re U.S. Med., Inc.*,
  531 F.3d 1272 (10th Cir. 2008) ..................................................... 39, 42

*In re Underwood*,
  2009 WL 5821030 (Bankr. M.D. Fla. Sept. 29, 2009) .......................................35

*In re White*,
  559 B.R. 787 (Bankr. N.D. Ga. 2016) ..............................................26

*In re XYZ Options, Inc.*,
  154 F.3d 1262 (11th Cir. 1998) ........................................................34

*Jones v. Novartis Pharmaceuticals Company*,
  720 Fed. Appx. 1006 (11th Cir. Apr. 30, 2018) ..............................................22

*Kelly v. Armstrong*,
  206 F.3d 794 (8th Cir. 2000)..................................................................44

*Kohn v. McGuire Woods LLP*,
  2012 WL 12903098 (D. N.J. June 29, 2012) ......................................................47

*Laboratory Corp. of Am. v. Prof. Recovery Network*,
  813 So. 2d 266 (Fla. 5th DCA 2002) ..............................................49

*Maiz v. Virani*,
  253 F.3d 641 (11th Cir. 2001) ........................................................23

*Matter of Donnan*,
   2016 WL 1085499 (Bankr. M.D. Ga. Mar. 17, 2016) .........................................39

*Murphy v. Blackjet*,
   2016 WL 3017224 (S.D. Fla. May 26, 2016) .....................................................50

*Nat. Chemistry L.P. v. Evans*,
   2015 WL 12843835 (M.D. Fla. June 2, 2015) ....................................................54

*Ramos v. Banner Health*,
   1 F.4th 769 (10th Cir. 2021) ...............................................................................17

*Regions Bank v. Kaplan*,
   2018 WL 3954344 (M.D. Fla. Aug. 17, 2018) ...................................................52

*Resol. Tr. Corp. v. Artley*,
   28 F.3d 1099 (11th Cir. 1994) ............................................................................32

*Seaboard Lumber Co. v. U.S.*,
   308 F.3d 1283 (Fed. Cir. 2002)...........................................................................17

*S.E.C. v. Elliott*,
   953 F.2d 1560 (11th Cir. 1992) ..........................................................................36

*Segal v. Forastero, Inc.*,
   322 So. 3d 159 (Fla. 3d DCA 2021) ...................................................................58

*Sound Foundation v. SCI Fund II, LLC*,
   2023 WL 2140132 (D. Or. Feb. 17, 2023)..........................................................45

*Triant v. American Medical Systems Inc.*,
   2020 WL 4049844 (D. Ariz. July 20, 2020) ................................................. 22, 23

*W.P. Productions, Inc. v. Tramontina U.S.A., Inc.*,
   2021 WL 7368584 (S.D. Fla. Dec. 15, 2021) ............................................... 58, 59

*Wiley v. Nobles*,
   2018 WL 4146135 (M.D. Fla. Aug. 30, 2018) ...................................................57

**Statute**

11 U.S.C. §544 ................................................................33

11 U.S.C. §548 ................................................................47

12 U.S.C. §1821 ......................................................... 31, 32

Fla. Stat. §625.111 ..................................................... 45, 46

Fla. Stat. §631.271 ............................................................7

Fla. Stat. §726.105 ........................................................47

Fla. Stat. §726.110 ........................................................31

**Rules**

Fed. R. Evid. 702 ............................................ 12, 16, 17, 18, 21, 22, 23

# PREFACE REGARDING RECORD CITATIONS AND DEFINED TERMS

References to the District Court appellate bankruptcy record are [Document Number–Attachment Number, ECF File-Stamped Page Number].

The District Court accepted documents filed under seal in the Bankruptcy Court for inclusion in the appellate record ("Sealed Documents") (Dist.Doc.12). Sealed Documents references are: [AP. Document Number].

Appellees use the following defined terms:

"Appellant" means plaintiff Daniel J. Stermer, as Creditor Trustee.

"Appellees" means collectively OR Companies, OR Holding, OR Title, and ATF Services.

"ATIF Services" means defendant Attorneys' Title Fund Services, LLC.

"ATIF Trust" means Attorneys' Title Insurance Fund.

"Complaint" means the Corrected Third Amended Complaint (3-13).

"Debtor" means ATIF, Inc.

"District Court Opinion" means the District Court's opinion affirming the REV Opinion and the SJ Opinion (Dist.Doc.64).

"FL-OIR" means Florida Office of Insurance Regulation.

"JVA" refers to the 2009 joint venture agreement between OR Holding and Debtor.

"Master Agreement" means the collection of reinsurance and related agreements between Debtor and OR Title, effective December 12, 2015 (3-300).

"OR Companies" means defendant Old Republic Title Companies, Inc.

"OR Holding" means defendant Old Republic National Title Holding Company.

"OR Title" means defendant Old Republic Title Insurance Company.

"REV Opinion" means the Bankruptcy Court's opinion after the REV Trial (3-349).

"REV Trial" means the Bankruptcy Court's bench trial on whether under the Master Agreement transaction Debtor received reasonably equivalent value for the assets it transferred to OR Title.

"SJ Opinion" means the Bankruptcy Court's summary judgment ruling (3-355).

## STATEMENT OF THE ISSUES AND
## APPLICABLE STANDARDS OF REVIEW

Appellees restate Appellant's statement of issues as follows:

1.      Did the Bankruptcy Court act within its discretion in partially denying a pre-trial motion to exclude expert testimony, allowing the expert testimony at the bench REV Trial, and finding such expert testimony unreliable under Federal Rule of Evidence 702 or otherwise not credible or useful?

Appellees agree this issue is subject to an abuse of discretion standard.

2.      Did the Bankruptcy Court properly hold Appellant, the plaintiff, to his burden of proof to demonstrate lack of reasonably equivalent value?

Appellees agree this issue is a question of law subject to plenary review.

3.      Did the Bankruptcy Court act within its discretion in denying Appellant's motion to conform the Complaint to the evidence?

Appellees agree that this issue is subject to an abuse of discretion standard.

4.      Did the Bankruptcy Court properly grant summary judgment and determine Appellant's actual fraud claims failed as a matter of law?

Appellees agree that the grant of summary judgment is subject to *de novo* review, but the Bankruptcy Court's factual findings as to reasonably equivalent value are subject to a "clearly erroneous" standard because the Court conducted the REV Trial. *In re Chase and Sanborn Corp.*, 904 F.2d 588, 593 (11th Cir. 1990)

(whether reasonably equivalent value was provided is a question of fact subject to clearly erroneous standard of review).

5.    Did the Bankruptcy Court properly grant summary judgment and determine Appellant's successor liability claims failed as a matter of law?

Appellees agree that the grant of summary judgment is subject to *de novo* review.

6.    Did the Bankruptcy Court properly grant summary judgment and determine Appellant's alter-ego claim failed as a matter of law?

Appellees agree the grant of summary judgment is subject to *de novo* review.

## STATEMENT OF THE CASE

### A. Factual Background

#### 1. Debtor and OR Holding Form ATF Services.

Before 2008, Debtor was a leading title insurer in Florida and financially healthy. (3-272,¶13.) At all relevant times, FL-OIR regulated Debtor. (3-272,¶¶10-11.) Debtor has been owned by ATIF Trust (3-272,¶8), and governed by an independent board of directors ("Debtor Board") (3-272,¶6; 3-274,¶¶112-118).

In 2008, Debtor suffered losses from the global financial crisis, and discovered that its attorney title agents had stolen $60 million. (3-272,¶14.) Due to its poor financial condition, FL-OIR (applying Florida law) was likely to bar Debtor from issuing new policies. (3-272,¶¶15-16.) Debtor sought help from OR Title, which led to the JVA. (3-272,¶¶17-24, 27-29.)

##### a. JVA

In July 2009, OR Holding and Debtor entered the JVA, which formed ATF Services. (3-272,¶¶30-31.) Debtor and OR Holding each owned 50% of ATF Services. (3-302,p.12[Art.VI,§2].) Debtor contributed to ATF Services a copy of its title plant (compilation of records used to search and detect title defects), contemporaneously valued at $10.7 million, and OR Holding contributed $10 million in cash and receivables. (3-272,¶¶5.d-f; 3-274,¶142; 3-282,pp.49-56; 3-25,¶81; 3-116.) ATF Services executed a $700,000 note to Debtor as a true-up. (3-

25,¶89.) Most of Debtor's workforce became ATF Services' employees. (3-272,¶38.) **After the JVA, Debtor retained more than $240 million in assets, including more than $144 million in cash and investments**. (3-25,¶82; 3-54,p.3.) FL-OIR formally approved the JVA (3-56,¶¶5, 9) and Debtor voluntarily relinquished its certificate of authority to issue new policies via a consent order with FL-OIR ("Consent Order"). (3-56,¶¶7(a)-(b); 3-272,¶33.) Under the Consent Order, Debtor continued to administer claims arising from its previously-issued policies until its 2017 bankruptcy filing. (3-56,¶¶7(c)-(d); 3-272,¶¶36, 111.)

b.    ATF Services

In July 2009, ATF Services was organized. (3-272,¶¶30-31.) After Debtor relinquished its certificate to issue new policies, most of Debtor's agents chose to write policies with OR Title. (3-272,¶32.) ATF Services' business is to provide services to those attorney-agents, for which it earns a service fee. (3-272,¶¶54, 60-62.) ATF Services never has been a title insurer. (3-272,¶55.)

ATF Services also maintains the title plant by manually entering digital images of title records into it (up to 25,000 records per day), which is costly and labor-intensive. (3-343,pp.197:9-198:12; 3-344,pp.126:19-127:4.) Because maintaining the title plant is so expensive, the title plant is not profitable. (3-272,¶63; 3-344,pp.125:23-126:14, 128:6-10.)

Since inception, ATF Services has been independently managed by a board of governors, which was comprised (through 2015) of three OR Holding nominees, two Debtor nominees, and one ATF Services designee. (3-272,¶¶64, 109; 3-302,p.7[Art.IV,§2]; 3-294,p.7[Art.IV,§2].) ATF Services has its own officers who run the company's day-to-day affairs. (3-272,¶109; 3-25,¶110; 3-27,¶30; 3-302,pp.9-12[Art.V]; 3-294,pp.9-12[Art.V].)

### c. Marks Assignment

In June 2011, Debtor assigned all rights, title and interest in and to twenty-nine (29) marks ("Marks") to ATIF Trust, its parent, pursuant to an Assignment of Trademarks and Service Marks recorded with the United States Patent and Trademark Office ("Marks Assignment"). (3-286.) At the time of the Marks Assignment, Debtor was solvent. (3-342,pp.102:19-24.)

### d. Amended JVA

From 2009 to 2011, ATF Services suffered losses of approximately $30 million, which OR Holding funded. (3-272,¶¶67-69.) Thus, the parties amended the JVA, converting Debtor's interest in ATF Services to governance-only ("Amended JVA"). (3-272,¶70; 3-285,p.6-§5; 3-294,pp.12-14[Art.VI,§§1-3].) The Debtor Board and FL-OIR approved the Amended JVA, effective October 2011. (3-38,p.32:15-17; 3-272,¶¶71-73.)

## 2. OR Title Reinsures Debtor's Policy Liability.

In late 2014 and 2015, Debtor again was in financial distress. (3-272,¶74.) Debtor requested a proposal from OR Title to reinsure all of Debtor's policy liability (3-272,¶77), which OR Title provided after conducting due diligence. (3-272,¶¶78-79.)

Debtor also received an offer from SOBC Corp. ("SOBC") to purchase Debtor for $1.00, and SOBC would not put any additional cash, investment, or other assets into Debtor (other than sale expenses) ("SOBC Offer"). (3-272,¶81; 3-323.) After considering OR Title's reinsurance proposal, the SOBC Offer, and putting Debtor into receivership, the Debtor Board voted to proceed with OR Title's proposal. (3-272,¶¶82-85; 3-344,pp.98:17-99:4.)

For the reinsurance transaction, both parties engaged outside counsel. (3-272,¶¶96-97.) In October 2015, Debtor and OR Title submitted transaction documents for FL-OIR's review. (3-272,¶¶86-87.) FL-OIR initially rejected the proposal, but then conditioned approval on OR Title assuming Debtor's reinsurance liability. (3-272,¶¶88-89.) OR Title agreed. (3-272,¶94.) After "thoroughly" reviewing the transaction as a whole, including conducting financial analysis, and ensuring it was a "fair deal between the parties" and in the "best interest" of Debtor's policyholders, FL-OIR approved the transaction. (3-25,¶180; 3-38,pp.103:12-13, 104:2-3, 160:9; 3-272,¶100; 3-319; 3-343,pp.95:6-97:7, 103:10-104:7, 111:15-23.)

a.  Master Agreement

The reinsurance transaction was documented via the Master Agreement (3-272,¶¶101-102), under which OR Title assumed all of Debtor's policy and reinsurance liabilities (the liability prioritized under Fla. Stat. §631.271(1)).  (3-25,¶193; 3-300,pp.15-25.)  OR Title contemporaneously estimated these liabilities at $46.1 million.  (3-342,p.38:5-14.)

In exchange for OR Title assuming Debtor's liabilities, Debtor transferred tangible assets to OR Title with a stipulated value of $47.5 million ("Stipulated Assets").  (3-7–3-9.)  As part of the Master Agreement, ATIF Trust (not Debtor) transferred the Marks to OR Title.  (3-274,¶130.)

b.  Post-Master Agreement

After the Master Agreement, Debtor continued to administer and pay its non-policy claims until it filed for bankruptcy.  (3-272,¶¶103, 111.)  In the same period, OR Title administered and paid claims on Debtor's title policy liability that OR Title assumed.  (3-343,pp.176:24-177:14.)  Debtor never has dissolved.  (3-355,pp.49-50; 3-25,¶234 & 3-24[Ex.C].)

**B.    Procedural History**

Debtor filed for bankruptcy in March 2017.  (3-272,¶111.)  In 2018, Appellant filed the adversary proceeding.  (3-13.)

Appellees moved for summary judgment on all counts (3-23–3-25), and Appellant moved for partial summary judgment (3-10–3-12). After briefing and oral argument (3-146; 3-194; 3-196; 3-197; 3-205; 3-217; 3-218; 3-219; 3-221; AP.Doc. 269; 3-248; 3-251; 3-254; 3-262), but prior to ruling, the Bankruptcy Court held the REV Trial, to determine whether under the Master Agreement transaction Debtor received reasonably equivalent value in exchange for the assets it transferred to OR Title. (3-340–3-345.) Because the parties stipulated to the value of Debtor's tangible assets (3-7–3-9), the issues to be tried were: (i) the value of any intangible assets Debtor transferred, including any title plant rights; and (ii) the value Debtor received under the Master Agreement transaction from OR Title's assumption of Debtor's policy and reinsurance liabilities.

The Bankruptcy Court held the REV Trial in two phases. (3-340–3-345.) After the initial title plant rights phase, which was to determine which rights (if any) Debtor had to the title plant as of the Master Agreement, the Bankruptcy Court ruled Debtor had some contingent rights to the title plant that Debtor gave up under the Master Agreement. (3-341,pp.80:19-84:25.) Thus, the Bankruptcy Court tried the issue of the value of those contingent rights and Debtor's other intangible assets, and the value of the reinsurance Debtor received.

The Bankruptcy Court issued its REV Opinion, finding that Appellant did not meet his burden to establish that Debtor received less than reasonably equivalent

value. (3-349.)  The Bankruptcy Court then issued its SJ Opinion, granting summary

judgment to Appellees on all counts and issued judgment in Appellees' favor.  (3-

355; 3-357.)

The District Court affirmed in full.  (Dist.Doc.64.)

Appellees address the remaining issues Appellant raises in the procedural

background section of his brief (Doc.31,pp.9-16):

### 1.    Pfeiffer.

Appellant hired Allen Pfeiffer ("Pfeiffer") to opine on value.  Pfeiffer issued

an expert report ("Pfeiffer Report") that purports to value Debtor's two categories

of intangible "assets" as of December 12, 2015 (Master Agreement date): (1) an

"option" to exit ATF Services, and purportedly "compete as a full service title

insurance company" ("Option to Reemerge"); and (2) a copy of the Debtor's title

plant as it existed on June 30, 2009, without having been updated for six years (the

"Inactive 2009 Title Plant Copy").  (AP.Doc.301,Ex.1[pp.46-50, 56 of 627].)

Appellees served the rebuttal expert report of Steven Hazel of FTI Consulting,

Inc. ("Hazel").  (AP.Doc.301,Ex.3[pp.522-627 of 627].)  Both parties moved to

exclude experts.  The Bankruptcy Court denied Appellant's motion to exclude

Hazel. (3-281; 3-278,pp.10:8-12:4.)  The Bankruptcy Court granted in part and

denied in part Appellees' motion to exclude Pfeiffer ("Pfeiffer Motion")

(AP.Doc.301), which oral ruling (3-278,pp.12:5-15:16) was reflected in a

contemporaneous order ("<u>Pfeiffer Order</u>") (3-275). The Pfeiffer Order granted the Pfeiffer Motion regarding the Option to Reemerge opinion finding it speculative (3-275,¶¶2-4), and denied the Pfeiffer Motion regarding the value of the title plant and Debtor's intangible assets (3-275,¶¶5-6). In its oral ruling, the Bankruptcy Court noted that Pfeiffer's opinions were subject to further *Daubert* scrutiny, stating: "Hazel's rebuttal testimony will be very helpful to the Court's consideration of whether Pfeiffer's opinion satisfies the Daubert standards. Therefore, the Court will deny the motion as to Pfeiffer's opinion of value of the title plant." (3-278,p.13:7-11.)

Pfeiffer testified at the REV Trial that the collective value of Debtor's intangible assets was $80 million (but did not individually value any intangible asset), and that realizing that value required a $21 million payment. (3-342,pp.149:8-17, 159:11-160:14.) Pfeiffer also testified that included in the $80 million valuation was $30 million for the Inactive 2009 Title Plant Copy. (3-342,pp.158:10-159:10.) Hazel testified that Pfeiffer's multiple was not based on accepted methodology and that Pfeiffer's valuation was based on flawed assumptions. (3-344,pp.23:3-5, 25:3-35:2.)

## 2. Rule 15(b) Motion.

During the REV Trial, Appellant orally moved to amend the Complaint, arguing the Marks Assignment was avoidable as an actual fraudulent transfer and

the Marks were recoverable from OR Title as a subsequent transferee. (3-342,p.90:4-6.) The Bankruptcy Court directed Appellant to file a written motion. (3-342,pp.89:16-98:5.) Appellant did so ("<u>Rule 15(b) Motion</u>") (3-316), and OR Title responded (3-317). The Bankruptcy Court denied the Rule 15(b) Motion as futile. (3-356.)

## SUMMARY OF THE ARGUMENT

### Summary of Argument Relating to the REV Trial and Fraudulent Transfer Claims (Issue On Appeal Nos. 1-4)

Appellant attempted to prove Debtor's actual fraudulent intent to hinder, delay or defraud its creditors via the Master Agreement through "badges of fraud". Because the reasonably equivalent value "badge" is key and fact-intensive, the Bankruptcy Court held the REV Trial.

As to the value Debtor received from liability reinsurance, OR Title's unrebutted expert testimony at the REV Trial was that a "central" estimate of the value Debtor received was $50.889 million (and reasonable up to $57.2 million). (3-344,pp.166:22-172:12.) Appellant argued Debtor received $46.1 million. (3-345,pp.30:2-33:6.)

As to the value the Debtor gave up, the parties stipulated that Debtor gave up the Stipulated Assets worth $47.5 million. (3-7–3-9.) Stopping there, reasonably equivalent value is present. In an effort to unbalance the scale, Appellant offered Pfeiffer's testimony on the value of intangible assets transferred under the Master

Agreement. Appellees' expert, Hazel, rebutted Pfeiffer. The Bankruptcy Court found that Appellant did not prove the value of any intangible assets transferred under the Master Agreement.

Appellant first argues that he did not get notice of the Bankruptcy Court's "reconsideration of its Daubert Order." This argument is meritless because the Bankruptcy Court expressly stated it would address Pfeiffer's *Daubert* qualifications at trial. Additionally, the Bankruptcy Court was well within its discretion to allow Pfeiffer to testify at the REV Trial and then determine his testimony did not satisfy FRE 702.

The Bankruptcy Court also properly found Pfeiffer did not establish his testimony was "the product of reliable principles and methods" despite his experience and "specialized knowledge." (3-349,p.27.) This finding was justified given Pfeiffer admitted his methodology was not based on any recognized authority, testifying "**I don't rely on textbooks, I rely on doing valuations the way I always do it**." (3-343,p.32:3-4). Moreover, even if Pfeiffer had passed muster under FRE 702, Pfeiffer valued assets that Debtor did not have as of the Master Agreement (3-349,p.28); and lumped assets Debtor did not have with those it did, rendering the valuation useless (3-349,p.28). The District Court affirmed that these findings were within the Bankruptcy Court's discretion. (Dist.Doc.64,pp.10-19.)

Addressing Appellant's remaining issues:

First, the Bankruptcy Court did not improperly shift the burden to prove "discount for marketability" (Issue 2). The plaintiff in a fraudulent transfer action bears the burden on all issues, and the Bankruptcy Court found Pfeiffer failed to value assets Debtor had as of December 12, 2015. The District Court affirmed. (Dist.Doc.64,p.25.)

Second, the denial of Appellant's Rule 15(b) Motion (Issue 5) was proper because the amendment was futile based on the parties' stipulated facts and Appellant's binding discovery responses, and because the proposed claim is time-barred.

Third, Appellant's actual fraud claims (Issue 6) were correctly decided. As set forth above, reasonably equivalent value was exchanged. Undisputed facts show no insider or concealment badges. (3-355,pp.29-31, 34-39.) Moreover, both Courts found based on stipulated and undisputed facts that the Master Agreement transfers had a "legitimate purpose" — enabling Debtor to obtain reinsurance of its policy liabilities. (3-355,pp.39-41; Dist.Doc.64,pp.40-42.) Any remand thus would require reversible error as to the Bankruptcy Court's findings on the badges of fraud *and also* abuse of discretion on the "legitimate purpose" finding. No basis for such findings exists.

**Summary of Argument Relating to Successor Liability and Alter Ego (Issues On Appeal Nos. 5 & 6)**

Appellant admits that he must prove *both* successor liability and alter-ego to establish liability against OR Companies and OR Holding. Thus, unless Appellant can demonstrate a basis for remand on ***both*** issues, Appellant's appeal on these claims is futile. No basis exists for remand of either.

The gravamen of successor liability – moving assets out of the reach of creditors for the benefit of identical owners – is absent. The District Court affirmed the Bankruptcy Court's decision that ATF Services was not Debtor's successor-in-interest based on the following stipulated and/or undisputed facts: (a) **Debtor retained over $240 million in assets** after ATF Services was formed; (b) Debtor continued to operate independently from ATF Services and was regulated by FL-OIR; and (c) Debtor never dissolved. Both Courts also found no evidence of common ownership. The Bankruptcy Court's granting Appellees summary judgment should be affirmed.

Appellant cannot prevail on alter-ego because as the Bankruptcy Court found and the District Court affirmed, it is undisputed that ATF Services was run by its own management, with appropriate independent board oversight, held regular board meetings, and kept business records in the ordinary course. Appellant presents no basis to disregard ATF Services' corporate form. This ruling should be affirmed.

## ARGUMENT

### I. Summary Judgment to OR Title on the Fraudulent Transfer Claims Was Proper. (Issue On Appeal Nos. 1-4)

The Bankruptcy Court properly granted OR Title summary judgment on the fraudulent transfer claims (3-13, Counts I-VIII). Appellant challenges the Bankruptcy Court finding and the District Court affirming that: (a) Appellant failed to prove lack of reasonably equivalent value, in large part based on finding Appellant's expert failed to satisfy Rule 702(c) of the Federal Rules of Evidence ("FRE") or otherwise finding such expert testimony lacked credibility or usefulness; (b) the burden to establish the value of transferred assets fell on Appellant, the plaintiff; (c) Appellant's Rule 15(b) Motion was futile; and (d) Appellant failed to establish actual fraud based on the totality of circumstances. As described below, none of the issues Appellant raises has merit, and the REV Opinion and the SJ Opinion should be affirmed in full.

### A. Appellant Failed to Prove Lack of Reasonably Equivalent Value. (Issue On Appeal No. 1)

In the REV Opinion, the Bankruptcy Court held that Appellant did not establish that Debtor's transfers under the Master Agreement were for less than reasonably equivalent value. (3-349,p.31.) That holding aligns with the testimony of Debtor's president, who unequivocally testified that no assets or rights of value other than the Stipulated Assets were transferred under the Master Agreement. (3-

344,pp.109:8-110:3.) To attempt to establish lack of reasonably equivalent value based on the value of Debtor's intangible assets, Appellant relied almost exclusively on Pfeiffer's testimony. The Bankruptcy Court determined that: (a) Pfeiffer did not establish that his testimony "is the product of reliable principles and methods," as required by FRE 702(c) (3-349,p.27); (b) Pfeiffer's $80 million intangible asset valuation included assets and rights Debtor did not have, and because Pfeiffer did not value these intangible assets separately, the Bankruptcy Court could not determine what portion of his $80 million valuation was attributable to them (3-349,p.28); and (c) Appellant failed to present evidence of the value of Debtor's rights or interest in the title plant as of December 2015 (*id*.). All are subject to an abuse of discretion standard.

### 1. Pfeiffer's Opinion Did Not Satisfy FRE 702.

#### a. The Pfeiffer Order Did Not Preclude the Bankruptcy Court's FRE 702 Finding.

Appellant argues the Bankruptcy Court was required "to give notice that it was reconsidering its Daubert Order Regarding Pfeiffer's Opinions." (Doc. 31,p.27.) Appellant's argument fails because (i) the Bankruptcy Court provided notice when ruling on the Pfeiffer Motion that Pfeiffer's testimony had not been deemed to satisfy *Daubert* for trial; and (ii) the Bankruptcy Court did not "reconsider" the Pfeiffer Order.

The Bankruptcy Court expressly stated that it planned to assess Pfeiffer's qualifications under *Daubert* based on trial testimony of Pfeiffer and Hazel. (3-278,p.13:4-10) ("[Appellant] contends that Pfeiffer did use a reliable methodology. . . . Hazel's rebuttal testimony will be very helpful to the Court's consideration of whether Pfeiffer's opinion satisfies the *Daubert* standards.").

Moreover, the Bankruptcy Court properly allowed Pfeiffer to testify and then assessed Pfeiffer's testimony under FRE 702, as was its obligation. The Bankruptcy Court was well within its authority to hear Pfeiffer's testimony at trial and then find such testimony did not satisfy FRE 702(c) or otherwise give it minimal weight in the REV Opinion. Dist.Doc.64,pp. 13-14 (collecting cases); *Att'y Gen. of Oklahoma v. Tyson Foods, Inc.*, 565 F.3d 769, 779-81 (10th Cir. 2009) (no abuse of discretion for judge conducting bench trial to deny pre-trial motions to exclude, admit all proffered expert testimony and subsequently exclude expert testimony as unreliable when issuing written ruling); *Est. of Stuller v. United States*, 811 F.3d 890, 895 n.3 (7th Cir. 2016) (same); *Ramos v. Banner Health*, 1 F.4th 769, 779-81 (10th Cir. 2021) (same).

Appellant's argument that the Bankruptcy Court's partial denial of the Pfeiffer Motion absolved Pfeiffer of satisfying FRE 702 at trial contravenes not only the authority above but also the requirement that the Bankruptcy Court assess FRE 702 at trial. *See Seaboard Lumber Co. v. U.S.*, 308 F.3d 1283, 1302 (Fed. Cir. 2002) (in

bench trials "the Daubert standards of relevance and reliability must still be met"). The District Court agreed, finding no need to exclude testimony before a bench trial. (Dist.Doc.64,pp.12-14.)

Even if the REV Opinion could be deemed a reconsideration of the Pfeiffer Order (it cannot), none of Appellant's cited authority (Doc.31,p.28) supports his contention that notice was required or that the Bankruptcy Court's rulings as to Pfeiffer were improper. As the District Court found, Appellant's authority is inapplicable because it involved jury trials, as well as exclusion of evidence *sua sponte* and based on untimely objections. (Dist.Doc.64,pp.12-13.)

Lastly, Appellant's argument that had he known the Bankruptcy Court would exclude Pfeiffer, he would have cured the defects in his testimony rings hollow. Appellant does not explain how he would have cured the defects that Pfeiffer failed to cite to any authority for his methodology and valued assets that were not transferred under the Master Agreement. He could not have because by the REV Trial, expert discovery had closed.

> b. Pfeiffer's Opinion Was Not the Product of Reliable Methods.

The Bankruptcy Court's FRE 702 ruling was proper because Pfeiffer's methodology was unsound.

To value Debtor's intangible assets, Pfeiffer attempted to estimate the revenue of a fictional "reconstituted [Debtor]," and then created a multiple to apply against

that revenue figure, the product of which would allegedly result in the value of Debtor's intangible assets. (3-342,pp.125:22-126:12, 140:20-149:5.) The multiple Pfeiffer used was "premium over tangible equity". (3-342,pp.140:20-147:12.) Pfeiffer could not identify a single authority on which he relied for that multiple and admitted his report did not identify any textbooks or valuation organizations that use it. (3-343,pp.31:14-32:11.) Hazel testified this multiple is not accepted in the valuation community. (3-344,p.23:3-19.)

Contrary to Appellant's claim, Pfeiffer did *not* name any authorities that discussed the "premium over tangible equity" multiple that he used. In fact, Pfeiffer conceded at deposition that his "premium over tangible equity multiple" was not in *any* treatise. (AP.Doc.301,Ex.2,pp.166:16-167:2[pp.327-328 of 627].) Instead, Pfeiffer named authorities with general valuation principles. But those general authorities do not support the use of his novel multiple. Appellant purports to cite two instances of Pfeiffer's trial testimony regarding text or treatises. (Doc.31,pp.34-35, citing 3-343,pp.30:20-22, 73:16-19.) The Bankruptcy Court struck the first testimony Appellant cites, which is not on appeal. (3-343,pp.30:20-31:9.) Although Appellant states that the Bankruptcy Court struck the second testimony excerpt (Doc.31,pp.34-35, citing 3-343,p.73:16-19), Appellant's counsel actually withdrew

the question after Appellees objected to it, removing the testimony from the Bankruptcy Court's consideration.[1]  (3-343,pp.76:8-13, 84:2-8.)[2]

In addition to Pfeiffer failing to justify use of his "premium over tangible equity" multiple, Pfeiffer's opinion also suffered from additional methodological flaws.  For example, Pfeiffer erred in devising the multiple. Pfeiffer's testimony established that the comparable companies he used to create the "premium over tangible equity" multiple, Stewart Title and ITIC, were not actually comparable to Debtor.  Both were publicly traded, but Debtor was never publicly traded.  (3-343,p.35:14-18.)  Debtor historically earned all its revenue from the Florida market (3-343,pp.36:24-37:2), whereas Stewart Title is a national title insurer with a very small presence in Florida (3-343,pp.35:19-36:4) and ITIC is primarily a North Carolina insurer with a very small presence in Florida (3-343,p.36:5-14).  Neither owned a title plant in Florida (and ITIC does not own a title plant anywhere).  (3-343,pp.39:13-40:20.)

---

[1] The District Court found Appellant's prior appeal of this issue "disconcerting". (Dist.Doc.64,p.17.)

[2] Appellant wrongly argues that the Bankruptcy Court's decision that Pfeiffer failed to cite relevant authority impacted the Court's ruling on the title plant valuation. (Doc.31,n.8.)  With respect to the title plant opinion, the Bankruptcy Court ruled that Pfeiffer failed to value the asset that the Debtor actually transferred under the Master Agreement.  (3-349,p.28.)

Pfeiffer also manufactured a speculative revenue figure to apply against his novel multiple. In 2015, Debtor was not issuing new title policies (and had not for over six years). But Pfeiffer assumed that Debtor could reemerge to issue new policies in 2015—and could *instantly* achieve hundreds of million in revenue, despite (a) Debtor not having any business plan to reemerge as a title insurer (3-343,pp.45:24-46:14); (b) Debtor not having any plan to recruit the attorney title insurance agents (who generated the revenue) (3-343,p.48:4-19); and (c) Pfeiffer not interviewing a single attorney agent or ATF Services employee to see if he/she would return to Debtor (3-343,pp.53:24-54:10). Nor did Pfeiffer account for the ramp-up time it would take for Debtor to re-emerge and operate on such a large scale. (3-343,p.56:16-22.)

Pfeiffer's testimony also made clear that his valuation of the intangible assets was predicated on Debtor receiving $21 million from a third party. (3-342,p.191:8-13; 3-343,pp.20:9-21:19.) As the Bankruptcy Court ruled in the Pfeiffer Order, this was impermissible speculation. (3-275,¶¶2-4; 3-278,pp.13:12-15:8.) In short, the Bankruptcy Court properly acted within its discretion to find Pfeiffer did not satisfy FRE 702(c) or was not otherwise credible.

> c. Pfeiffer's Credentials Did Not Preclude the Bankruptcy Court's FRE 702(c) Finding.

Appellant argues that Pfeiffer's credentials absolved Appellant of satisfying FRE 702(c). (Doc.31,p.32.) However, the court must assess FRE 702 compliance,

notwithstanding the expert's credentials. *In re 3dfx Interactive, Inc.*, 389 B.R. 842, 865, 885 (N.D. Cal. 2008) (finding expert's opinion did not comply with FRE 702 despite finding he had appropriate credentials); *Jones v. Novartis Pharmaceuticals Company*, 720 Fed. Appx. 1006, 1007 (11th Cir. Apr. 30, 2018) (same). As the District Court recognized, the testimony at trial showed that Pfeiffer admitted that he lacks any valuation certification or designations. (Dist.Doc.64,p.14.) Moreover, Pfeiffer testified on cross-examination (3-342,pp.162:2-165:23) that at least one court previously disallowed his opinion as speculative. *See Celebrity Cruises, Inc. v. Essef Corp.*, 434 F.Supp.2d 169, 186-87 (S.D.N.Y. 2006). In any event, the requirement that Pfeiffer establish his testimony was the product of reliable principles and methods is distinct from the requirement that he have specialized knowledge and expertise. The Bankruptcy Court recognized Pfeiffer's credentials, but found under FRE 702(c) that Pfeiffer's methodology was unreliable because it was not supported by any valuation authority. (3-349,pp.27-28.)

As the District Court recognized, the cases Appellant cites are inapplicable. (Dist.Doc.64,p.14.) At best, they show other courts exercising their discretion to allow expert testimony. Because the Bankruptcy Court did not base its ruling on Pfeiffer's lack of expertise under FRE 702(a) or lack of facts under FRE 702(b), Appellant's reliance on *Triant* fails. (Doc.31,p.33, citing *Triant v. American Medical Systems*, 2020 WL 4049844, at *13 (D. Ariz. July 20, 2020).) The court in

*Triant* considered a challenge based on FRE 702(b) and exercised its discretion to find a doctor qualified to render an opinion despite not disclosing the literature she relied on in forming her opinion (but barred her from referencing such literature at trial).  That finding was well within the *Triant* court's discretion.  In *Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001), the district court exercised its discretion to find that the challenged expert opinion satisfied *Daubert* based on the expert's personal experience where the relevant issue was the passport-stamping practices of immigration authorities.  But the fact that *Triant* and *Maiz* determined that experts satisfied *Daubert* does not mean the Bankruptcy Court could not exercise its discretion to disallow Pfeiffer.

### 2. Appellant Failed to Establish the Value of Debtor's Intangible Assets.

The Bankruptcy Court also found that even if Pfeiffer had passed muster under FRE 702, Appellant still failed to carry his burden to prove any value of intangible assets because Pfeiffer valued assets and rights that Debtor did not own as of December 2015 (so could not have been transferred under the Master Agreement).  (3-349,p.28.)  The District Court correctly noted the Bankruptcy Court's broad discretion to give testimony little or no weight.  (Dist.Doc.64,p.18); *see also Bellitto v. Snipes*, 935 F.3d 1192, 1209 (11th Cir. 2019) (trial court in bench trial entitled to same deference as a jury in assessing credibility of expert testimony).

Pfeiffer testified that he did not opine on the value of each separate intangible asset, but rather opined that the combined value of all of Debtor's intangible assets was $80 million. (3-343,pp.28:10-29:2.) Those assets included Debtor's workforce and IP (consisting primarily of the Marks). But Appellant stipulated and/or evidence otherwise shows Debtor did *not* possess those assets in 2015, meaning it could not have transferred them in 2015: Debtor's workforce moved to ATF Services in 2009 (3-272,¶38), and the IP (the Marks) was transferred from Debtor to ATIF Trust in 2011 (3-274,¶129). Pfeiffer admitted there was no way to back out the value of any of these assets from his valuation. (3-343,pp.29:3-30:1.) As a result, the Bankruptcy Court could not determine what portion of Pfeiffer's $80 million valuation was attributable to the assets Debtor did not possess in 2015, and so could not deduct that value from the $80 million. (3-349,p.28.) Thus, Appellant set forth no evidence of the value of any intangible asset Debtor actually transferred.

Pfeiffer also testified regarding the value of a title plant asset that Debtor did not own. (3-349,p.28.) Pfeiffer opined on the value of the title plant as if Debtor had an absolute right to a copy of the title plant when the Master Agreement transaction occurred. But, the Bankruptcy Court ruled that Debtor did not have that absolute right. (3-349,pp.10-11[¶¶8-10], 21.) Rather, Debtor had a contingent right in a title plant—one that would materialize only if one of four unlikely scenarios occurred. (*Id.*) Additionally, even that title plant—if Debtor's right materialized—

would be duplicative of OR Holding's copy of the title plant. (3-349,p.10[¶9].) Pfeiffer provided no testimony concerning: the value of the contingent interest in the title plant, how the contingency impacted his valuation, or how OR Holding's right to a copy of the title plant impacted the value of Debtor's contingent interest in the title plant. (3-349,p.28.) Accordingly, the Bankruptcy Court properly found Appellant failed to present evidence of the value of the right Debtor actually had in the title plant as of 2015. (*Id.*)

Because Pfeiffer's methodology failed to establish the value of any intangible asset Debtor actually possessed in 2015, the Bankruptcy Court properly determined Appellant failed to satisfy his burden to prove such value was transferred to OR Title.

### B. Appellant Had the Burden to Prove Value. (Issue On Appeal No. 2)

Appellant concedes that he failed at trial to offer any proof of value of the Debtor's contingent right to the title plant in 2015. Appellant argues that it was not his burden to do so; he need only have offered evidence of an unfettered right to the title plant as of the valuation date, and then it was OR Title's burden to show why that valuation was not valid or must be discounted. (Doc.31,pp.19, 36-39.) Appellant is wrong.

Appellant carries the burden to prove lack of reasonably equivalent value. *See Chase & Sanborn Corp.*, 904 F.2d at 593-94. Thus, Appellant must present evidence

of the value of the asset transferred. *In re Knight*, 473 B.R. 847, 852 (Bankr. N.D. Ga. 2012) ("…since the Court lacks any evidence regarding the value of the Property at the time of the transfer, the Court has no option other than to rule against the party with the burden of proof."); *In re Dealers Agency Sers., Inc.*, 380 B.R. 608, 619-20 (Bankr. M.D. Fla. 2007) (finding no evidence of lack of reasonably equivalent value where plaintiff did not establish the value of the assets transferred); *In re Teltronics, Inc.*, 540 B.R. 481, 485-87 (Bankr. M.D. Fla. 2015) (trustee failed to establish value of debtor's waiver of right to block patent portfolio sale where trustee only introduced evidence of the patent portfolio value, which debtor did not own).

The Bankruptcy Court found the asset transferred, if any, was a version of the title plant that was contingent upon the occurrence of conditions that had not occurred as of December 2015. (3-349,pp.20-21.) Appellant therefore had to present evidence of the value of this contingent right. *Chase & Sanborn*, 904 F.2d at 595 ("It is well established that a contingent liability cannot be valued at its potential face amount; rather, it is necessary to discount it by the probability that the contingency will occur and the liability become real.") (quotation marks removed); *In re White*, 559 B.R. 787, 802 (Bankr. N.D. Ga. 2016) (finding plaintiff failed to prove the value Debtor received was not reasonably equivalent to the value of the "future contingent right"). The Bankruptcy Court found Appellant failed to do so

and the District Court affirmed. (3-349,p.28; Dist.Doc.64,pp.24-28.) This finding applied the proper standard.

Appellant's argument that the Bankruptcy Court improperly burden-shifted relies on the faulty premise that the "unfettered right to the title plant" is the relevant asset. It is not; the contingent right to the title plant in 2015 is. No evidence was presented on the value of that contingent right. Accordingly, as the District Court found, all of Appellant's cases are distinguishable because they "deal with discounts to value, rather than contingent rights." (Dist.Doc.64,p.26.) Each case – none of which involve fraudulent transfer claims – entails a situation where a party proved the value of an asset/right as their initial burden, and the other side argued that valuation must be discounted but failed to provide evidence substantiating that discount. (Doc.31,pp.37-38). By contrast, Appellant failed to prove under his initial burden the value of the subject asset—the contingent right to the title plant. Thus, Appellees had no valuation to challenge with discounts and none of Appellant's cases apply.

## C. Appellant's Rule 15(b) Motion Was Properly Denied. (Issue On Appeal No. 3)

During trial, Appellant sought leave to amend the Complaint to assert that: Debtor made the Marks Assignment in 2011 to ATIF Trust with actual intent to hinder, delay or defraud creditors; the Marks Assignment was avoidable under an extended lookback period; and the Marks were recoverable from OR Title as a

subsequent transferee.  (3-316.)[3]  A court need not allow an amendment during trial

to conform the evidence to the pleadings where the amendment is futile or will

unduly prejudice the opposing party.  *CSMC 2007-C4 Egizii Portfolio LLC v.*

*Springfield Prairie Props, LLC*, 2019 WL 4131706, at *2 (C.D. Ill. Aug. 30, 2019).

The Bankruptcy Court did not abuse its discretion in denying the Rule 15(b) Motion

as futile for the reasons described below.

### 1.    The Master Agreement Was Not a Fraudulent Transfer.

The Bankruptcy Court properly denied the Rule 15(b) Motion as futile

because – assuming *arguendo* the Marks Assignment is avoidable, and it is not (*infra*

Part I.C.2) – the Master Agreement in 2015 was not a fraudulent transfer.  (3-

356,pp.10-11.)  Appellant erroneously asserts this holding is circular and appears to

insinuate the Bankruptcy Court did not consider the Marks in its REV Opinion.

(Doc.31,p.41.)    The Bankruptcy Court determined Appellant presented no

admissible evidence of the value of the intangible assets (including the Marks)

transferred to OR Title under the Master Agreement.  (3-349,pp.29-31.)    The

Bankruptcy Court's findings regarding the multiple shortcomings with Appellant's

---

[3] The Complaint nowhere references: (1) the Marks Assignment; (2) that the Marks
Assignment was a fraudulent transfer; (3) any facts upon which the Marks
Assignment could be avoided; (4) "subsequent transferee" liability against OR Title;
(5) any avoidance lookback period other than two years and four years; or (6) the
FDIC as a creditor.  (3-13.)

valuation evidence are correct. *See supra* Part I.A. Because the Master Agreement is not a fraudulent transfer, the Rule 15(b) Motion is futile as a matter of law.

### 2. Marks Assignment Is Not Avoidable.

The Rule 15(b) Motion also is futile because the Marks Assignment is not avoidable as a matter of law. *See Arnold Rogers v. City of Orlando, Fla.*, 660 Fed. Appx. 819, 824, n.8 (11th Cir. 2016) (appellate court may affirm "for any reason supported by the record, even if not relied on by the district court"). Appellant bears the burden to prove that Debtor transferred the Marks to ATIF Trust with actual intent to hinder, delay, or defraud Debtor's creditors. *In re Berkman*, 517 B.R. 288, 300 (Bankr. M.D. Fla. 2014).

Appellant's binding discovery responses establish that Debtor's transfer of the Marks to ATIF Trust was not made with intent to hinder, delay or defraud its creditors. They state that the Marks Assignment was made "to further protect and insulate its intellectual property from the [Appellees]" during negotiation of the Amended JVA. (3-290,No.21.) Appellant never alleges that any of the Appellees were creditors of Debtor. Moreover, during trial, Appellant stipulated to Debtor's solvency in 2011, when the Marks Assignment was made. (3-342,pp.99:20-24, 102:19-24.) In light of Appellant's admission of Debtor's solvency and a legitimate purpose for the Marks Assignment, Appellant cannot establish actual fraudulent intent. *In re Earle*, 307 B.R. 276, 296 (Bankr. S.D. Ala. 2002) (finding plaintiff fails

to prove intent to delay or defraud creditors where legitimate reason proven for the transfer); *In re Stewart*, 280 B.R. 268, 284 (Bankr. M.D. Fla. 2001) (same).

In his Rule 15(b) Motion, Appellant claims that he proved actual fraudulent intent – despite the Debtor's solvency and the Marks Assignment's legitimate purpose – based in part on the lack of reasonably equivalent value and concealment badges of fraud. Regarding reasonably equivalent value, as a matter of law, a transfer from a solvent subsidiary to its parent company for a legitimate purpose, as here, is not a fraudulent transfer, even where it lacks adequate consideration. *In re Hirshauer*, 2011 WL 1135100, at *2 (M.D. Fla. March 28, 2011) (finding no fraudulent intent for transfer to insider for no consideration where transferor was solvent); *In re Direct Access Partners, LLC*, 602 B.R. 495, 545 (Bankr. S.D.N.Y. 2019) (finding distribution to parent from solvent subsidiary for no consideration was not fraudulent). Regarding concealment, Appellant asserts that the transfer was concealed because "Debtor . . . concealed that it did not, in fact, own the [Marks]." (3-316,p.8.) But concealment of ownership is not the relevant inquiry; concealment of the *transfer* is. Debtor's transfer of the Marks to ATIF Trust unequivocally was *not* concealed: the Marks Assignment is a public record that Debtor contemporaneously filed and recorded with the USPTO. (3-286.)

Appellant's remaining badges of fraud – Debtor's continued "use" of the Fund mark and transfer to an insider (its parent) (3-316,p.8) – even if technically satisfied,

do not establish actual fraudulent intent in light of the Debtor's solvency and the Marks Assignment's proper purpose. *Supra* p. 29.

Thus, Appellant could never establish the Marks Assignment was actually fraudulent and amendment was futile.

### 3. The Proposed Claim Is Time-Barred.

The longest avoidance lookback period asserted in the Complaint is four years prior to the petition date, i.e., March 2, 2013 – March 2, 2017. (3-13, Counts V-VIII); *see also* Fla. Stat. §726.110. The Marks Assignment occurred in June 2011 (3-286), well beyond the Complaint's asserted lookback period.

Appellant attempted to use 12 U.S.C. §1821(d)(14) ("FDIC Extender Statute") to enlarge the avoidance lookback period—based on the 2008 appointment of FDIC as receiver of Washington Mutual Bank (a creditor of Debtor). (3-356,p.10.) The Bankruptcy Court correctly rejected this attempt. (3-356,pp.7-10.) The purpose of the FDIC Extender Statute is to provide FDIC additional time to investigate and pursue claims the failed financial institution held before FDIC's appointment. (3-356,p.8 (citing *F.D.I.C. v. Barton*, 96 F.3d 128, 133 (5th Cir. 1996)).) This Court has explained the two-step operation of the FDIC Extender Statute as "[t]he district court must first determine whether the claims being brought by the [FDIC] were viable under the applicable state statute of limitations at the time the [FDIC] was appointed receiver. If the state statute has not yet run, the period

provided by 12 U.S.C. § 1821(d)(14)(A) then begins to run." *Resol. Tr. Corp. v. Artley*, 28 F.3d 1099, 1101 (11th Cir. 1994) (quotation omitted). Appellant's attempt to factually distinguish *Artley* (Doc.31,p.40) ignores how the FDIC Extender Statute operates. *F.D.I.C. v. RBS Securities Inc.*, 798 F.3d 244, 249 (5th Cir. 2015) ("The FDIC Extender Statute works by hooking any claims that are live at the time of the FDIC's appointment as receiver and pulling them forward to a new, federal, minimum limitations period – six years for contract claims, three years for tort claims."). *F.D.I.C. v. Cameron*, which Appellant cites (Doc.31,p.40), supports the Bankruptcy and District Court's rulings. *Cameron* involved a cause of action that accrued *before* FDIC was appointed. 986 F.Supp.2d 1337, 1340-41 (N.D. Ga. 2013). In fact, the Bankruptcy Court cites to *Cameron* in its order denying the Rule 15(b) Motion (3-356,n.27) to demonstrate the two-step inquiry it employed.

Appellant, without any support, argues that the FDIC Extender Statute applies to the Marks Assignment based on a literal reading. (Doc.31,pp.39-40.) But courts have expressly and uniformly rejected other "literal" readings of the FDIC Extender Statute that would permit FDIC's later appointment to resuscitate a stale state law claim. *See F.D.I.C. v. Coleman*, 2015 WL 476234, at *5 (D. Idaho Feb. 5. 2015) ("Although a literal reading of § 1821(d)(14)(B) might suggest otherwise, courts have interpreted the Extender Statute as not allowing the FDIC–R to 'revive claims for which the state limitations period has expired before the date of federal

receivership.'") (quoting *F.D.I.C. v. McSweeney*, 976 F.2d 532, 534 (9th Cir.1992)). Rather, courts interpreting the FDIC Extender Statute hold the appointment of FDIC as receiver restarts the applicable state limitations period on viable claims. *See Fed. Deposit Ins. Corp. v. Copenhaver*, 2014 WL 12621202, at *3 (M.D. Fla. May 10, 2014), *report and recommendation adopted sub nom. Fed. Deposit Ins. Corp. v. Mangano*, 2014 WL 12621581 (M.D. Fla. June 4, 2014).

No fraudulent transfer claim existed when FDIC was appointed receiver of Washington Mutual Bank (Debtor's creditor); in fact, FDIC's appointment pre-dated the Marks Assignment by almost three years. (3-356,n.31.) Thus, there is no basis to borrow the FDIC Extender Statute. Notably, Appellant cites no case law applying the FDIC Extender Statute to a purported fraudulent transfer occurring after FDIC receivership appointment. Appellant also cites no case law using the FDIC Extender Statute as the "applicable law" for avoiding a transfer in a bankruptcy under 11 U.S.C. § 544. Appellant relies on *In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016), which involves the IRS, Internal Revenue Code provisions, and the ability of a bankruptcy trustee to step into the shoes of the IRS to take advantage of an IRS ten-year collection period. The Bankruptcy Court properly distinguished *Kipnis*, as the IRS provisions operate differently than and serve a different function from an extender statute like the FDIC Extender Statute. (3-356,pp.9-10.) The Bankruptcy

Court correctly determined the FDIC Extender Statute is inapplicable to the Marks Assignment, making the claim time-barred and amendment futile.

### D. Summary Judgment for Appellees on the Actual Fraudulent Transfer Claims Was Proper. (Issue On Appeal No. 4)

To succeed on his claims for actual fraudulent transfer, Appellant bears the burden to prove by a preponderance of evidence that Debtor transferred assets with actual intent to hinder, delay, or defraud creditors. *Berkman*, 517 B.R. at 300. Courts look to the totality of circumstances surrounding the transfers. *In re XYZ Options, Inc.*, 154 F.3d 1262, 1271 (11th Cir. 1998). This involves both a subjective evaluation of the debtor's motive and the statutory badges of fraud. *Stewart*, 280 B.R. at 283. Even where badges of fraud may be present, actual intent may not be presumed where a legitimate purpose for the transfer exists. *Id.*

The Bankruptcy Court granted summary judgment to Appellees on the actual fraudulent transfer claims, finding that Appellant failed to prove Debtor acted with actual intent to defraud based on the totality of the circumstances—eight badges of fraud were lacking and a legitimate purpose existed for the transfer. (3-355,p.41.)[4] Appellant contends the Bankruptcy Court erred because it: (1) found three badges

---

[4] Appellant never attempted to prove these badges: Debtor retained possession after the transfer, Debtor absconded, Debtor removed or concealed assets, and Debtor transferred the essential assets of the business to a lienor who then transferred the assets to an insider of Debtor. Additionally, Appellant does not challenge the Bankruptcy Court's finding that a fifth badge, that Debtor incurred a substantial debt, did not exist. (Doc.31,n.15.)

of fraud existed, which precluded judgment as a matter of law; (2) erroneously

determined three other badges of fraud were not present; (3) erroneously determined

the Master Agreement transfer had a legitimate purpose; and (4) cannot reconcile

that judgment with its crime-fraud ruling. None has merit.

### 1. The Finding That Three Badges Exist Does Not Preclude a Finding That Debtor Lacked Fraudulent Intent.

Appellant's contention that the Bankruptcy Court's determination that three

badges[5] were present requires a finding of actual intent to defraud (Doc.31,p.44) is

meritless. The presence or absence of one or many badges is not determinative of

the transferor's fraudulent intent. *In re N. Am. Clearing, Inc.*, 2014 WL 4956848, at

\*13 (Bankr. M.D. Fla. Sept. 29, 2014). The badges of fraud are "intended to be

guideposts—as opposed to ineluctable factors—in the Court's analysis of the totality

of the circumstances." *In re Rollaguard Sec., LLC*, 570 B.R. 859, 878 (Bankr. S.D.

Fla. 2017). Other courts have found a debtor lacked actual intent to defraud where

three badges were present. *In re Underwood*, 2009 WL 5821030, at \*12 (Bankr.

M.D. Fla. Sept. 29, 2009); *In re Schohl*, 2006 WL 753096, at \*4 (N.D. Ohio Mar.

22, 2006) (on summary judgment).

---

[5] The Bankruptcy Court found Appellant established (1) a transfer of substantially all assets, (2) Debtor had been sued or threatened with suit, and (3) insolvency. (3-355,p.41)

The cases Appellant cites do not require a finding of actual intent where three badges are present. (Doc.31,pp.43-44.) Moreover, Appellant wrongly describes the cases as finding fraud based on two and three badges: *In re Sherman* found five badges (67 F.3d 1348, 1354 (8th Cir. 1995)); *In re Toy King Distributors, Inc.* found four badges (256 B.R. 1, 128-29 (Bankr. M.D. Fla. 2000)); *Jennings* found three badges, because the debtor purchased the relevant asset for himself (insider) (332 B.R. 465, 470-472 (Bankr. M.D. Fla. 2005)); and *S.E.C. v. Elliott*, found no badges, but remanded for an evidentiary hearing on the fraudulent transfer determination because the claimant had no opportunity to present evidence on the badges (953 F.2d 1560, 1568 (11th Cir. 1992)).

Moreover, Appellant cites no case outside of the Ponzi-scheme context where a court found actual fraudulent intent when the lack of reasonably equivalent value badge was absent (and certainly no case where, as here, both lack of reasonably equivalent value and insider badges were absent).

> ### 2. The Undisputed Facts Show No Concealment, No Insiders, and Reasonably Equivalent Value.

*No Concealment.* The undisputed facts show the Master Agreement transfer was not concealed. The stipulated facts and testimony during the REV Trial show the transfer was disclosed to and thoroughly reviewed by FL-OIR. (3-272,¶¶86-89,95,100; 3-343,pp.104:13-105:9, 111:15-23.) As the District Court found, a "transfer that took place pursuant to an agreement that was disclosed to a government

agency . . . is not a concealed transfer." (Dist.Doc.64,p.36.) Appellant cites no case finding a transfer was concealed where it was disclosed to a governing regulatory agency. The evidence shows that the transfer was disclosed to others, as well— including ATF Services' members and employees (3-25,¶224 & 3-106; 3-25,¶225 & 3-107; 3-25,¶228 & 3-114; 3-25,¶229 & 3-115) and Debtor's creditors (3-25,¶223; 3-26,¶75; 3-105), and that certain Master Agreement documents (a warranty deed and IP Assignment) were publicly recorded (3-25,¶226 & 3-24[Comp.Ex.B]; 3-25,¶230 & 3-24[Comp.Ex.A]).[6]

Appellant does not dispute the transfer was disclosed to FL-OIR, but instead wrongly argues the disclosure was not sufficient. First, Appellant inaccurately states OR Title "did not disclose information about the Title Plant or IP" and FL-OIR "relied on ORT's incomplete representations rather than getting the undisclosed

---

[6] In the Bankruptcy Court, Appellant filed a response to Appellees' statement of facts ("SOF",3-25) purporting to dispute many of the SOFs. (Appellant's Response to SOF ("Resp. SOF"), at 3-146.) As set forth in AP.Doc.269, the purported disputes do not create any genuine issue of material fact because the Resp. SOF (i) actually states the SOF is undisputed (*see* AP.Doc.269 at App.A); (ii) does not provide any evidence to substantiate its purported dispute (*id.* at App.B); or (iii) provides evidence but that evidence fails to create a genuine issue (*id.* at App.C). As relevant here, the Resp. SOF states ¶¶226-27, 229-30 are undisputed (as set forth in (i) above), and the Resp. SOF ¶¶223-225 & 228 cite no evidence to create a dispute (as set forth in (ii) above). *See* AP.Doc.269 at App.A (p.13 of 40) and App.B (p.25-26 of 40).

information" (Doc.31,p.46); neither statement is supported by the evidence Appellant cites.

Second, Appellant wrongly argues that notwithstanding disclosure to FL-OIR, the transfer was concealed because the documents were filed with trade secret protection. (Doc.31,p.45.) Even with the trade secret protection, FL-OIR still reviewed *all* of the deal's terms. (3-25,¶216 & 3-83, 3-96–3-100.)[7] Moreover, the undisputed evidence shows the agreement evidencing the transfer was subsequently filed with FL-OIR *without* trade secret protection. (3-25,¶217 & 3-93,pp.332:17-334:5; 3-197,¶26 & 3-93,pp.333:12-334:5.)[8]

Nor was the transfer concealed because the Master Agreement included a confidentiality provision. (Doc.31,p.46; 3-197,¶22; 3-300,p.9,§7(b)(iv); 3-217,¶22 (quoting provision).) A confidentiality provision does not constitute concealment as a matter of law. *In re Advanced Telecomm. Network, Inc.*, 321 B.R. 308, 337 (Bankr. M.D. Fla. 2005), *rev'd on other grds,* 490 F.3d 1325 (11th Cir. 2007).

Appellant points to two financial statements purportedly as evidence of concealment. (Doc.31,pp.46-47; 3-334, 3-324.) Those financial statements do not show concealment. The asset value reported to FL-OIR (in Column H) is nearly identical to that reported in OR Title's internal analysis. *Compare* 3-334

---

[7] *Supra* n.6 at (iii). *See* AP.Doc.269 at App.C,p.40 of 40
[8] *Supra* n.6 at (ii). *See* AP.Doc.269, App.B,p.25 of 40.

(48,395,000) with 3-324 (49,396,000). Moreover, both documents show the transaction was approximately break-even for OR Title, not any attempt to defraud FL-OIR.

Finally, Appellant wrongly argues that the public recording of the deed for real property included in the transfers is irrelevant to the concealment badge. (Doc.31,p.47, citing Dist.Doc.64,p.36.) The real property was among the Stipulated Assets transferred under the Master Agreement (and was part of the reasonably equivalent value analysis). Thus, its public disclosure shows no concealment of the transfer occurred.

Because the undisputed evidence shows the Master Agreement transfer was disclosed to FL-OIR, ATF Services' members and employees, and Debtor's creditors, no concealment occurred.

*No Insider Status*. Whether the transferee was an insider of the transferor is "one of the most important" badges. *In re Toy Kings*, 256 B.R. at 128. Appellant contends that OR Title was a non-statutory insider of Debtor as a result of their relationship. (Doc.31,p.49.) To establish non-statutory insider status, Appellant must prove both a "close relationship" between OR Title and Debtor such that OR Title could unduly influence Debtor, and that the Master Agreement transaction was not arms'-length. *See Matter of Donnan*, 2016 WL 1085499, at *11 (Bankr. M.D. Ga. Mar. 17, 2016); *In re U.S. Med., Inc.*, 531 F.3d 1272, 1278 (10th Cir. 2008).

Insider status exists where the relationship between the purported insider and the debtor "*compels* the conclusion that the individual or entity has a relationship with the debtor, close enough to gain an advantage attributable *simply to affinity* rather than to the course of business dealings between the parties." *In re Bos*, 561 B.R. 868, 883 (Bankr. N.D. Fla. 2016). Appellant cannot prove insider status.

The undisputed facts show no close relationship. OR Title and Debtor had an ordinary business relationship resulting from the JVA between OR Title's parent company, OR Holding, and Debtor. (3-272,¶30.) Such ordinary business relationships do not confer insider status as a matter of law. *See In re KCMVNO, Inc.*, 2010 WL 4064832, *5, n.4 (Bankr. D. Del. Oct 15, 2010). At all times, OR Title and Debtor had separate ownership and separate boards. (3-272,¶¶8-9; 3-274,¶¶112-118.) Appellant does not dispute that Debtor and OR Title had no common board members, the Debtor Board approved the Master Agreement transaction over an alternative proposal from another company, or that both sides were represented by counsel. (3-272,¶¶81, 83, 85, 96, 97; 3-274,¶118.) Thus, the Bankruptcy Court properly found no insider status.

Contrary to Appellant's statement, the Bankruptcy Court did not "disregard" the facts Appellant presented. (Doc.31,p.51.) The Bankruptcy Court expressly addressed most of the facts Appellant identified (3-355,p.35) and found as a matter of law those facts did not give rise to an insider relationship. (3-355,p.37.) The

record amply supported that conclusion. Indeed, most of Appellant's "facts" are not supported by his record citations. For example, Appellant states that "Debtor requested ORT review Debtor's finances and suggest courses of action" (Doc.31,p.49), but the deposition testimony Appellant cites concerns OR Title's due diligence in connection with the proposed Master Agreement transaction. Appellant cites no case finding a counter-party's due diligence confers insider status. Even if Appellant's statement were properly cited, it still would not support insider status where the review was done at Debtor's request and gave no authority to OR Title to take any action or to force Debtor to take any action. Likewise, Appellant states that in October 2015, OR Title began administering Debtor's claims, but none of the citations refer to October 2015. (Doc.31,pp.49-50.) In any event, the undisputed evidence shows OR Title administered claims pursuant to a Litigation Services Agreement that was entered contemporaneously with the Master Agreement. (3-197,¶23 & 3-204.) That agreement creates no genuine issue of material fact regarding insider status because it gave *Debtor*, not OR Title, final authority over major claims decisions. (3-204[Art.1.1].)

Nor does Appellant's reliance on *In re Fla. Fund of Coral Gables, Ltd.* support insider status. (Doc.31,p.50, citing 144 Fed. Appx. 72 (11th Cir. 2005).) In *Coral Gables*, the debtor's principal, who was operating a Ponzi scheme, was a longtime associate of the transferee [a police pension fund] and had personal and business

relationships with the transferee's directors and fund administrator. 144 Fed. App'x at 73. The transferee received the disputed transfers by "squeezing" the debtor's principal into making payments after the transferee discovered the debtor was engaged in fraud as a result of their close relationship. *Id.* at 74. By contrast, OR Title and Debtor did not "mix their business", as Appellant contends (Doc.31,p.50); each had separate management and separate boards (3-272,¶¶8-9; 3-274,¶¶112-118).

The undisputed facts also show that the Master Agreement transaction was the result of arms'-length negotiations. Debtor considered the SOBC Offer as a competing offer to OR Title's. (3-272,¶¶83-85.) Ultimately, a majority of the Debtor Board voted to proceed with the Master Agreement transaction over the SOBC Offer. (3-272,¶¶84-85.) Both parties hired outside counsel in connection with the transaction. (3-272,¶¶96-97.) As a matter of law, these facts show that each party had its own bargaining power such that it was not subject to an insider's influence. *U.S. Med.*, 531 F.3d at 1277, n.4.

Appellant's "facts" do not create any genuine dispute. For example, Appellant claims without support that the parties hired counsel as "afterthoughts" (Doc.31,p.51), but there is no dispute that both parties hired separate outside counsel before the deal was completed. (3-272,¶¶96-97.) Appellant's statement that OR Title's deputy general counsel, Ted Conner ("Conner"), spoke with FL-OIR "on Debtor's behalf" appears nowhere in his record citations. (Doc.31,p.51, citing 3-

10,¶197.)  Evidence shows Conner was acting on OR Title's behalf.  (3-221,¶3 & 3-223,¶5.)  Appellant's claims that OR Title informing Debtor what it was "willing to do" to get the deal done and Conner asking the Debtor Board to "take one for the team"[9] (Doc.31,p.50) shows lack of arms'-length dealing are meritless in light of the undisputed facts that the Debtor Board considered the SOBC Offer and receivership in addition to OR Title's proposal, that an independent board made the ultimate choice, and that Debtor engaged outside counsel.  (3-272,¶¶81-86, 96; 3-274,¶¶116-118.)  In fact, some members of the Debtor Board voted to move forward with SOBC instead of OR Title.  (3-320.)  Finally, Appellant cites OR Title's purported "veto power over any deal" (Doc.31,p.51) as indicative of insider status—but what Appellant refers to is a provision in the Amended JVA whereby Debtor covenanted to OR *Holding*, not OR Title, not to sell its stock (3-285,p.7,¶8.a.(ii)).  Moreover, it is undisputed that neither OR Holding nor OR Title ever *exercised* any veto power over the SOBC Offer.  (3-323.)  Finally, Appellant claims that "Debtor's senior management and directors may have had mixed motives" (Doc.31,p.52), but, in fact, the Bankruptcy Court found those facts supported *non-insider* status (3-355,p.38)

---

[9] Appellant cites as support for this hearsay statement an email from one of Debtor's directors to the rest of the Debtor Board, in which he purports to summarize statements made during a Board meeting. The email expressly states that the "team" was the agents comprising the membership serviced by ATF Services, not OR Title or Debtor, the two parties to the transaction.

and the District Court noted the alleged mixed motives had not been proven (Dist.Doc.64,p.40). Thus, Appellant created no genuine dispute over any material fact.

The District Court affirmed the Bankruptcy Court's "thorough" analysis "based on undisputed facts." (Dist.Doc.64,p.39.) These undisputed facts confirm there is no evidence to support a finding of insider status.

*REV*.  Courts recognize that reasonably equivalent value is a key factor in the badges of fraud analysis.  *In re Hanson*, 373 B.R. 522, 526 (Bankr. N.D. Ohio 2007); *Schohl*, 2006 WL 753096, at *4.  As discussed *supra* Part I.A, the Bankruptcy Court properly found reasonably equivalent value was exchanged.

### 3. The Undisputed Facts Show the Master Agreement Transfer Had a Legitimate Purpose.

Even where the circumstantial evidence supports a finding that certain badges of fraud exist, those badges entitle a plaintiff only to a rebuttable presumption that fraudulent intent exists.  *Kelly v. Armstrong*, 206 F.3d 794, 798 (8th Cir. 2000).  That presumption can be overcome where a legitimate purpose exists for the transfer.  *Id.*  Thus, even where several badges of fraud exist, a court can still find a transferor did not act with actual fraudulent intent.  *Earle*, 307 B.R. at 296 (finding no actual intent despite presence of several badges of fraud); *Stewart*, 280 B.R. at 284 (finding plaintiff failed to prove actual intent where several badges of fraud and a legitimate

purpose existed); *Schohl*, 2006 WL 753096, at *4 (finding legitimate purpose means several badges do not establish fraudulent intent).[10]

The material facts regarding the purpose of the asset transfer – to enable OR Title to assume all of Debtor's policy and reinsurance obligations – are undisputed. The Master Agreement's bulk reinsurance transaction was authorized by Florida statute. (3-272,¶¶78, 94); Fla. Stat. §625.111. Given Florida's statutory mandate to prioritize policyholders' claims, and that FL-OIR scrutinized the transaction and concluded it was "in the best interest of [Debtor's] title insurance policyholders" (3-319), the transfer was indisputably legitimate. Where, as here, the undisputed facts present clear evidence of a legitimate purpose, summary judgment is appropriate. *Schohl*, 2006 WL 753096, at *4 (granting summary judgment after finding legitimate purpose despite presence of several badges of fraud); *Sound Foundation v. SCI Fund II, LLC*, 2023 WL 2140132, at *8-12 (D. Or. Feb. 17, 2023) (same).

The facts Appellant identifies do not create a genuine issue of material fact regarding the transfer's legitimate purpose. Appellant cites two inadmissible hearsay statements purporting to report on Conner's statements concerning OR Title's reasons for keeping Debtor out of receivership and asking the Debtor Board to "tak[e] one for the team (the members of the Fund)" (Doc.31,p.54, citing 3-

---

[10] Appellant's claim (Doc.31,n.18.) that legitimate purpose is an affirmative defense is not supported by any authority and is inconsistent with cases cited herein.

10,¶¶165, 166 (citing document not admitted at trial)), as well as unsupported statements that the Debtor Board was concerned with liability (*id.* pp.54-55, citing 3-10,¶¶157, 166-67, 170). As the District Court recognized, Appellant wrongly and without support presumes that if the transfer had some benefit to either OR Title or Debtor's directors, that necessarily renders its purpose illegitimate. (Dist.Doc.64,p.42.)

Appellant's claim that Florida's statutes contain a scheme for how troubled insurers resolve financial distress likewise fails to create a genuine issue. (Doc.31,p.55.) The fact that the Florida legislature has established guidelines for an insolvent insurer says nothing about this transfer's purpose. Moreover, another Florida statute authorizes bulk reinsurance transactions like the Master Agreement. *See* Fla. Stat. §625.111. The undisputed evidence regarding Florida's statutory scheme is that statutory receivership is *not* the preferred option for struggling insurers. (3-343,pp.91:23-92:1.)

The Bankruptcy Court properly found the purpose was legitimate.

### 4. The Crime-Fraud Ruling Is Irrelevant.

Appellant's claim that the Bankruptcy Court's summary judgment ruling and crime fraud ruling are "irreconcilable" (Doc.31,p.44) is meritless. The crime fraud ruling is irrelevant to the fraudulent transfer inquiry because it concerned the intent of the *transferee* (OR Title), while the fraudulent transfer claim concerns the intent

of the *transferor* (Debtor). *Compare* 3-12,pp.14:23-15:1 with 11 U.S.C. §548(a)(1)(A); Fla. Stat. §726.105(1)(a). Because the Bankruptcy Court did not assess Debtor's intent in the crime-fraud ruling, that ruling has no bearing on the actual fraudulent transfer analysis.

Moreover, in relying on the crime-fraud exception, Appellant improperly attempts to "bootstrap" a discovery ruling into law of the case. *See Kohn v. McGuire Woods LLP*, 2012 WL 12903098, *12 (D. N.J. June 29, 2012) (rejecting trustee's attempt to "bootstrap" a holding that plaintiff made a *prima facie* case for the crime-fraud exception "into law of the case" of fraudulent transfer claim). In resolving a discovery dispute, the Bankruptcy Court found Appellant made a *prima facie* case that OR Title engaged in fraudulent conduct. (3-12,p.12:3-8, 16:5-9.) But that *prima facie* case was rebuttable and was rebutted based on evidence presented on summary judgment and during the REV Trial. The summary judgment and crime-fraud rulings are consistent. *See Kohn*, 2012 WL 12903098, at *12 (granting defendant summary judgment on fraudulent transfer claim despite earlier ruling that plaintiff established *prima facie* case for crime-fraud exception).

## II.     Summary Judgment to OR Holding, OR Companies, and ATF Services on the Claims for Successor Liability and Alter-Ego Was Proper.

The Bankruptcy Court granted summary judgment to Appellees on the claims for successor liability and alter-ego, allegedly arising from the 2009 JVA. The SJ Opinion should be affirmed.

## A. Summary Judgment for Appellees on Successor Liability Was Proper. (Issue On Appeal No. 5)

The Bankruptcy Court properly granted summary judgment to ATF Services on Counts X and XI because the undisputed facts show ATF Services was not Debtor's successor as a result of the 2009 JVA.

Because the general rule is that a successor corporation is not liable for its predecessor's liability, a court will not impose successor liability unless one of four exceptions applies. *Bernard v. Kee Mfg. Co., Inc.*, 409 So. 2d 1047, 1049 (Fla. 1982). The two exceptions at issue here are: (1) the transaction is a *de facto* merger, and (2) the successor is a mere continuation of the predecessor. The undisputed facts show that neither applies. Successor liability cannot apply where, as here, a company (ATF Services) received a small fraction of a corporation's (Debtor's) assets, after which the transferor-corporation continued to operate a separate business alongside the transferee-company for nearly eight years. (3-272,¶¶5.b., 30-31, 35-36, 54-55, 111; *infra* Part II.B.1.)

### 1. No *De Facto* Merger.

"A de facto merger occurs when one corporation is absorbed by another without formal compliance with the statutory requirements for a merger." *Florio v. Manitex Skycrane, LLC*, 2010 WL 5137626, *4 (M.D. Fla. Dec. 10, 2010). If there has been a change in substance—and not just form—no *de facto* merger occurred.

*See Laboratory Corp. of Am. v. Prof. Recovery Network*, 813 So. 2d 266, 270 (Fla. 5th DCA 2002).

To prove *de facto* merger, Appellant must establish four elements, which represent "indicia of commonality": (i) continuity of the selling corporation; (ii) continuity of the stockholders; (iii) dissolution of the selling corporation; and (iv) assumption of liabilities. *Florio*, 2010 WL 5137626, *4. As the District Court held, the Bankruptcy Court properly analyzed each requisite factor, and assessed the "whole" relationship between ATF Services and Debtor to find no *de facto* merger. (Dist.Doc.64,pp.47-48.)

a.    Continuity of Selling Corporation

Continuity of the selling corporation is evidenced by the same assets, management, personnel, and physical location. *Gary Brown & Assoc., Inc. v. Ashdon, Inc.*, 2006 WL 8435164, at *2 (S.D. Fla. Mar. 14, 2006). The undisputed evidence shows that Debtor and ATF Services did not have the same assets, and that Debtor transferred only a small fraction of its assets to ATF Services. (3-25,¶¶81, 82). After the JVA, Debtor retained more than $240 million (3-25,¶82; 3-54,p.3), while ATF Services received a title plant then-valued at $10.7 million plus a license

to use certain IP, as well as furniture and equipment, for which ATF Services paid $3 million. (3-25,¶81;[11] 3-116; 3-282,p.4,§4(b), p.8,§15, pp.54-7[Ex. E]; 3-27,¶13.)

As the District Court found (Dist.Doc. 64,p.45), Appellant falsely claims that he "disputed" that Debtor retained more than $240 million in assets. (Doc.31,p.58.) Although Appellant purported to "dispute" the fact in his response to summary judgment, that response states "Debtor's assets totaled $240,762,580". (3-146,¶82; Dist.Doc.64,p.45.) Appellant also attempts to evade this undisputed fact by claiming that no case mandates "equivalent assets". (Doc.31,p.58.) Appellant's claim is unavailing for two reasons: first, courts in fact require the "same" assets (*Gary Brown*, 2006 WL 8435164, at *2*; Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 153 (Fla. 4th DCA 1994)); and second, the undisputed facts above demonstrate that Debtor retained substantially all of its assets. (3-25,¶¶81, 82.) Indeed, Appellant alleged in his fraudulent transfer claims that Debtor transferred substantially all of its assets to OR Title in 2015—so could not have transferred them to ATF Services in 2009. (3-13,¶89(c).) Appellant points to *Murphy v. Blackjet* to support his contention that Florida law does not require a successor have the same assets. (Doc.31,p.58, citing 2016 WL 3017224 (S.D. Fla. May 26, 2016).) *Murphy* does not support Appellant's argument (3-355,pp.45-46) because there the predecessor

---

[11] Appellant purports to "dispute" 3-25,¶81, but he provides no contradictory evidence. *Supra* n.6 at (ii). *See* AP.Doc.269,p.28 of 40.

remained in possession and control of, and continued using, all of its assets after a sham "foreclosure" after which the successor entity was formed. *Id.* at *3.

As to continuity of business, Appellant argues that the Bankruptcy Court erred by finding on summary judgment that "prior to the 2009 JVA, Debtor's core business was that of a licensed title insurer." (Doc. 31, p.59.) Appellant cites no contrary facts. Nor could he; he admitted that in 2009 that Debtor was "the leading title insurer in Florida". (*Id.*,p.4; 3-272,¶13.)

Given the absence of the same assets and same business, the fact that Debtor and ATF Services had some overlap in employees, name, location, and management cannot establish the requisite continuity. Moreover, although certain of Debtor's employees became employees of ATF Services after the JVA, those employees ceased carrying out Debtor's core business (title insurance), and Debtor employed other personnel to conduct its affairs. (3-272,¶¶38-39.) The Fund name was used pursuant to a license agreement. (3-272,¶¶55-56.). Although some of Debtor's former officers became officers of ATF Services (3-272,¶¶40-53), ATF Services and Debtor have at all times had their own distinct officers and boards (3-25,¶¶103, 110; 3-27,¶¶27, 30; 3-53,pp.7-12[Art. IV-V]; 3-60,p.3[No. 5]; 3-61,pp.7-12[Art. IV-V]; 3-64,p.3[Art. IV-V]; 3-272,¶64; 3-274,¶¶112-118, 121; 3-340,pp.110:22-111:5).[12]

---

[12] Although Appellant purports to dispute 3-25,¶¶103 & 110, nothing Appellant cited creates a dispute. *Supra* n.6 at (iii). *See* AP.Doc.269,App.C,p.30-31 of 40.

### b. Continuity of Stockholders

There is no continuity of stockholders between ATF Services and Debtor. When ATF Services was formed in 2009, it was owned 50/50 by Debtor and OR Holding. (3-302,p.12[Art.VI,§2].) In 2011, Debtor's shares in ATF Services were converted to Class B, which did not have any financial rights. (3-294,pp.12-13[Art.VI,§§1-2].) In 2016, ATIF Trust replaced Debtor as the owner of ATF Services' Class B shares. (3-272,¶¶104-106.) Neither Debtor (since 2011) nor ATIF Trust (since 2016) have shares with financial rights. Since 2011, OR Holding has owned all of ATF Services' financial interest.

Appellant attempts to establish continuity by arguing that ATIF Trust, through Debtor, owned ATF Services. (Doc.31,pp.59-60.) Appellant cites no authority to support disregarding the corporate separateness of Debtor in its ownership of the joint venture entity, ATF Services. Nor, as the District Court found (Dist.Doc.64,p.46), does Appellant cite any authority supporting his argument that ownership of governance-only shares establishes common ownership. To Appellees' knowledge, none exists.

### c. Dissolution

Appellant argues that Debtor "is in the process of dissolving." (Doc.31,p.60.) "In the process" is not sufficient to establish this element; the predecessor company must be formally dissolved. *Amjad Munim*, 648 So. 2d at 154; *Regions Bank v.*

*Kaplan*, 2018 WL 3954344, at *5 (M.D. Fla. Aug. 17, 2018). Appellant cites no authority to support his claim that this requirement is "immaterial" (Doc.31,p.60); *Coral Windows*, on which he relies, **requires dissolution**. 2013 WL 321584, at *4 (S.D. Fla. Jan. 28, 2013). The undisputed evidence shows that Debtor has not dissolved. (3-25,¶¶233-234; Dist.Doc.64,p.47.)[13]

### d. Assumption of Liabilities

The facts concerning whether ATF Services assumed Debtor's liabilities are undisputed: ATF Services sublet a few commercial property leases from Debtor (3-272,¶59), but did not assume Debtor's hundreds of millions of liabilities in title policies. (3-272,¶36.) Appellant fails "to point to any genuine dispute of material fact that the value of the lease liabilities comes close to making up enough of Debtor's liabilities to even suggest a *de facto* merger and thus summary judgment was warranted." (Dist.Doc.64,p.48.)

While Appellant's inability to establish any one *de facto* merger factor is fatal to his claim, the undisputed facts show Appellant cannot establish any. Accordingly, the Bankruptcy Court properly awarded Appellees summary judgment.

### 2. No Mere Continuation.

The analysis for the mere continuation exception to successor liability is similar to the analysis for *de facto* merger, with a common identity of assets,

---

[13] Appellant did not dispute 3-25,¶¶233 & 234. (*See* 3-146,¶¶233-234.)

location, management, personnel and stockholders "essential" to a finding of mere continuation. *Nat. Chemistry L.P. v. Evans*, 2015 WL 12843835, at \*3 (M.D. Fla. June 2, 2015). As set forth above, the undisputed facts show that Appellant cannot establish the requisite elements. *Supra* pp.49-53. In short, because the undisputed facts show ATF Services was not a "reincarnation of [Debtor] under a different name," summary judgment for Appellees was proper. *Gary Brown*, 2006 WL 8435164, at \*2; *see also Coral Windows*, 2013 WL 321584, at \*5 (finding no mere continuation as a matter of law).

Because Appellant pled his successor liability claims and alter-ego claim as dependent on one another, judgment for Appellees on the successor liability claims renders the alter-ego claim (Count IX) moot. Thus, if this Court affirms the Bankruptcy Court's grant of summary judgment for Appellees on successor liability, it need not address the alter-ego claim.

## B. Summary Judgment for Appellees on the Alter-Ego Claim Was Proper. (Issue On Appeal No. 6)

The Bankruptcy Court properly granted summary judgment on the alter-ego claim (Count IX) in favor of ATF Services, OR Companies and OR Holding. To assess alter-ego claims, Florida law uses the piercing the corporate veil doctrine. *In re Homelands of DeLeon Springs, Inc.*, 190 B.R. 666, 670 (Bankr. M.D. Fla. 1995). Courts are "reluctant to pierce the corporate veil and will do so only in exceptional

cases where there has been extreme abuse of the corporate form." *In re Paul C. Larsen, P.A.*, 610 B.R. 684, 687-88 (Bankr. M.D. Fla. 2019).

To pierce the corporate veil, Appellant must prove three separate elements: (1) OR Companies and OR Holding dominated and controlled ATF Services to such an extent that ATF Services' independent existence was non-existent; (2) ATF Services' corporate form was used fraudulently or for an improper purpose; *and* (3) the fraudulent or improper use of ATF Services' corporate form caused injury to Debtor's creditors. *In re Paul C. Larsen, P.A.*, 626 B.R. 446, 452 (M.D. Fla. 2021). This Court should affirm the Bankruptcy Court because the undisputed material facts establish Appellant cannot satisfy two of the elements as a matter of law. (3-355,pp.62-65.)

### 1. No Improper Use of Corporate Form.

"Florida's high regard for corporate ownership requires a showing that the corporation was specifically organized or used to mislead creditors or perpetuate fraud before a party can pierce a corporation's veil." *In re Bull*, 528 B.R. 473, 488 (M.D. Fla. 2015) (internal citations omitted). The Bankruptcy Court correctly determined the requisite affirmative showing of deliberate and improper misuse of the corporate form cannot be established "where the corporate entity was initially created and thereafter used for a legitimate purpose." (3-355,n.236) (citing *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 374 (Bankr. M.D. Fla. 2014).)

The undisputed material facts unequivocally demonstrate ATF Services was not only initially created but also thereafter used for a legitimate purpose, providing ancillary services and support to attorney-agents for title policies. (3-272,¶¶5.b, 54-55.) Indeed, Appellant's own expert (Ryan) testified at deposition that she could not point to any improper or fraudulent use of the corporate form. (3-251,Ex. 1[58:5-8].) ATF Services was formed pursuant to the Consent Order's directive. (3-56,¶5.) Appellant mischaracterizes and misconstrues the import of the Bankruptcy Court's citation to and reliance on *Fundamental*. (3-355,n.236; Doc.31,pp.62-63.) Appellant focuses solely on the Bankruptcy Court's discussion regarding the legitimate purpose for ATF Services' formation and ignores the undisputed facts that thereafter ATF Services was (and still is) operated for the same legitimate purpose.

The Bankruptcy Court correctly determined Appellant's purported "evidence" supporting his allegation of improper use of ATF Services' corporate form to be inadequate as a matter of law. (3-355,p.63.) For example, Appellant's reliance on the existence of a joint checking account maintained by ATF Services is misplaced. Appellant provides no authority that the mere existence of a joint checking account—without more—constitutes improper use of the corporate form. The Bankruptcy Court correctly noted that Appellant "introduced no evidence to show that the joint account was actually *used* to divert funds from [Debtor's] creditors or to advance a fraudulent scheme." (3-355,p.63 (emphasis in original).)

Appellant argues that Appellees withheld evidence germane to the claim. (Doc.31,p.63.) That claim is belied by the fact he never moved to compel a further production from Appellees after receiving the additional information the Bankruptcy Court directed Appellees to produce. (3-215.) Moreover, Appellant expressly waived his right to appeal this issue. (Doc.31,n.1.)

Appellant's argument that the Bankruptcy Court ignored record evidence that established ATF Services did not observe all corporate formalities fails. (Doc.31,pp.63-64.) Even if a corporation does not observe corporate formalities, that alone is not enough to pierce the corporate veil under Florida law. *See Larsen*, 610 B.R. at 688. Moreover, the record evidence demonstrates ATF Services observed corporate formalities. (3-27,¶22; 3-272,¶¶64-65.)

Appellant purports to recite "facts"—but each is inaccurate or legally irrelevant. (Doc.31,p.64; 3-219,App.D.) A court need not accept the non-moving party's version of the facts if, as here, the record plainly contradicts it. *Wiley v. Nobles*, 2018 WL 4146135, at *8 (M.D. Fla. Aug. 30, 2018). For example, Appellant asserts ATF Services failed to calculate its service fee (Doc.31,p.64), but the service fee earned was set by contracts with OR Title (3-272,¶¶60-62; 3-57–3-59). Appellant also asserts "despite ATFS being financially co-owned by Debtor and [OR Holding] until 2011, in 2010, ATFS' tax returns reported [OR Holding] holding all of ATFS' profit." (Doc.31,p.64.) Appellant omits record evidence showing this tax

reporting change resulted from a binding contract between Debtor and OR Holding executed in April 2011. (3-197,¶14; 3-202; 3-219,App.D[pp.52-53].) Finally, Appellant asserts "ATFS had no employees – ORT employees performed all ATFS' work." (Doc.31,p.64.) But the record shows ATF Services had employees until April 2017, at which point ATF Services transferred its employees to OR Title upon approval of ATF Services' board of directors to obtain tax benefits. (3-219,App. D[p.48]; 3-274,¶136.)

The record supports the Bankruptcy Court's finding, which the District Court affirmed, that there was no improper use of ATF Services' corporate form.

## 2.      Debtor's Creditors Were Not Injured.

The Bankruptcy Court correctly determined Appellant cannot establish that Debtor's creditors were injured by ATF Services' corporate form. (3-355,pp.64-65.) This element "does not merely require some injury to a judgment creditor; it requires that 'the fraudulent or improper use of the corporate form caused injury' to the judgment creditor." *W.P. Productions, Inc. v. Tramontina U.S.A., Inc.*, 2021 WL 7368584, at *7 (S.D. Fla. Dec. 15, 2021). The aggrieved creditor must show its injury was caused by the use of the corporation "to mislead creditors or to perpetuate a fraud upon them." *Segal v. Forastero, Inc.*, 322 So. 3d 159, 165 (Fla. 3d DCA 2021).

The mere inability of a debtor to ultimately satisfy a debt owed to a creditor is insufficient to prove the requisite nexus. *See Tramontina,* 2021 WL 7368584, at *7; *see also Bull*, 528 B.R. at 493. Stated differently, "piercing the corporate veil is not simply a mechanism to provide a plaintiff . . . with an after-the-fact, judicially imposed personal guaranty." *Tramontina,* 2021 WL 7368584, at *7.

For the reasons stated *supra* Part II.C.1, as a matter of law, Appellant cannot establish that ATF Services was formed or operated for an improper purpose. Thus, there is no legal basis by which Appellant can satisfy the element that improper use of the corporate form caused Debtor's creditors' injuries. *See Bull*, 528 B.R. at 493 (finding creditor's claim that it was injured by improper use of corporate form "necessarily fails" where creditor failed to establish that the corporate form was improperly used).

Even if it could, the undisputed facts establish Appellant cannot prove any improper use of ATF Services' corporate form caused Debtor's creditors' injuries. There is no evidence that Debtor's creditors had any business dealings or financial interactions with ATF Services. The majority of filed claims against Debtor are closing protection letters and other non-policy tort claims relating to real estate transactions that predate ATF Services' formation. (3-355,n.244.) And it is undisputed that after ATF Services was formed, Debtor (not ATF Services) evaluated, paid and/or defended against existing claims made against it. (3-

272,¶¶36, 103.)  Because the damages suffered by Debtor's creditors arose before ATF Services' formation and are unrelated to its operations, ATF Services' corporate form did not cause (and could not have caused) any injury to Debtor's creditors.  *See Larsen*, 610 B.R. at 691; *Harbaugh v. Greslin*, 436 F.Supp.2d 1315, 1321 (S.D. Fla. 2006).  Appellant incorrectly asserts that this deficiency is inconsequential because ATF Services is liable for all of Debtor's debts as its successor in interest.  (Doc.31,p.65.)  For the reasons discussed *supra* Part II.A, ATF Services is not Debtor's successor in interest as a matter of law.

This Court should affirm the Bankruptcy Court's grant of summary judgment in favor of ATF Services, OR Companies and OR Holding on Count IX of the Complaint.  If this Court affirms the alter-ego ruling, then Appellant's appeal of the successor liability claim is moot.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request this Court affirm the

Bankruptcy Court's judgment in its entirety.

Respectfully submitted,

*/s/ Lara Roeske Fernandez*
Marie Tomassi, Esquire
Florida Bar No. 772062
mtomassi@trenam.com
Lara Roeske Fernandez, Esquire
Florida Bar No. 0088500
lfernandez@trenam.com
Rhys P. Leonard, Esquire
Florida Bar No. 59176
rleonard@trenam.com
Trenam Law
101 E Kennedy Boulevard, Suite 2700
Tampa, FL  33602
Tele: (813) 223-7474

and

Ryan T. Schultz, Esquire
Illinois Bar No. 6288585
rschultz@foxswibel.com
Ashley K. Martin, Esquire
Illinois Bar No. 6297126
amartin@foxswibel.com
Fox Swibel Levin & Carroll LLP
200 W Madison Street, Suite 3000
Chicago, IL 60606
Tele: (312) 224-1231

*Attorneys for Appellees Old Republic National Title Holding Company, Old Republic National Title Insurance Company, Attorneys' Title Fund Services, LLC and Old Republic Title Companies, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

I certify that that this brief complies with Fed. R. App. P. 32(a)(7) because Appellees have moved to enlarge the word limit to 15,000 words (the same word limit provided to Appellant for his principal brief – *see* Doc. 26),[14] and excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 13,331 words.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

*/s/ Lara Roeske Fernandez*
Attorney

---

[14] Appellees' unopposed motion for leave to file this brief in excess of the word limit (Doc. 34, 35) is currently pending. Should the Court deny the motion, Appellees will file an amended brief consistent with the Court's word limit.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 21, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered CM/ECF recipients.

*/s/ Lara Roeske Fernandez*
Attorney