**No. 23-10850-HH**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

IN RE: ATIF, INC.

DANIEL J. STERMER, as Creditor Trustee,

*Appellant*,

v.

OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY, OLD REPUBLIC NATIONAL TITLE HOLDING
COMPANY, OLD REPUBLIC TITLE COMPANIES, INC., and
ATTORNEYS' TITLE FUND SERVICES, LLC,

*Appellees.*

---

Appeal from the United States District Court
for the Middle District of Florida

D. Ct. No. 2:21-cv-950-JLB
Bankr. No. 2:17-bk-1712-FMD
Adv. Pro. No. 2:18-ap-531-FMD

---

### APPELLANT'S REPLY BRIEF

---

<div align="right">

JON POLENBERG, ESQ. (FL BAR NO. 653306)
DARREN GOLDMAN, ESQ. (FL BAR NO. 88638)
BECKER & POLIAKOFF, P.A.
1 EAST BROWARD BLVD., STE. 1800
FORT LAUDERDALE, FL 33301
PHONE: (954) 987-7550
FAX: (954) 985-4176
JPOLENBERG@BECKERLAWYERS.COM
DGOLDMAN@BECKERLAWYERS.COM
TFRITZ@BECKERLAWYERS.COM

*Attorneys for Appellant Daniel J. Stermer, as
Creditor Trustee*

</div>

**No. 23-10850-HH**
**Stermer v. Old Republic National Title Insurance Co.** *et al.*

**CERTIFICATE OF INTERESTED PERSONS**

The appellant, Daniel J. Stermer, as Creditor Trustee ("Appellant"), under

Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, discloses

the following as a complete list of all persons and entities known to Appellant to

have an interest in the outcome of this appeal:

Anderson, Margaret M. (counsel for Appellees)

ATIF, Inc. (Debtor)

Attorneys' Title Fund Services, LLC (Appellee)

Attorneys' Title Insurance Fund (Debtor's Parent)

Badalamenti, The Honorable John Leonard (Middle District of Florida District Court Judge)

Becker & Poliakoff, P.A. (counsel for Appellant)

Delano, The Honorable Caryl E. (Middle District of Florida Chief Bankruptcy Judge)

Fernandez, Lara Roeske (counsel for Appellees)

Fox Swibel Levin & Carroll LLP (counsel for Appellees)

Goldman, Darren (counsel for Appellant)

Goldsmith, John (counsel for Appellees)

Leonard, Rhys P. (counsel for Appellees)

Martin, Ashley K. (counsel for Appellees)

Old Republic International Corporation (ORI) (Parent Company of Appellees)

C-1

**No. 23-10850-HH**
**Stermer v. Old Republic National Title Insurance Co.** *et al.*

Old Republic National Title Holding Company (Appellee)

Old Republic National Title Insurance Company (Appellee)

Old Republic Title Companies, Inc. (Appellee)

Polenberg, Jon (counsel for Appellant)

Schultz, Ryan M. (counsel for Appellees)

Stermer, Daniel J., as Creditor Trustee (Appellant)

Tomassi, Marie (counsel for Appellees)

Trenam Law (counsel for Appellees)

Any other persons or entities on Appellees' Certificate of Interested Persons

24010780v.6

TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..................................................C-1

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ..................................................................................iv

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT ........................................................................................................6

I.   The Bankruptcy Court Erred in Granting Judgment to ORT. ........................6

     A.   The Bankruptcy Court's Pfeiffer-Related Rulings Were
Incorrect and an Abuse of Discretion...................................................6

          1.   Appellees Conflate Reliability (and thus Admissibility)
with Credibility. ............................................................6

          2.   The Bankruptcy Court Failed to Give Notice It Was
Reconsidering Its *Daubert* Ruling. .............................6

          3.   Pfeiffer Is Qualified to Provide Expert Testimony
Under 702....................................................................9

          4.   The Bankruptcy Court Erred in Determining Appellant
Failed to Establish the Value of the Intangible Assets. ...........11

     B.   Proving the Contingency Discount Fell on ORT – Not
Appellant. ........................................................................................12

     C.   The Bankruptcy Court Abused Its Discretion in Denying the
15(b) Motion...................................................................................14

          1.   The Bankruptcy Court Erred When It Denied Appellant
the Opportunity to Establish the IP Was Fraudulently
Transferred. ...............................................................14

          2.   Appellees Ask This Court to Ignore the FDIC Extender
Statute's Plain Language........................................16

D. The Bankruptcy Court Erred in Granting ORT Summary Judgment on the Fraudulent Transfer Claims. ...................................17

1. The Crime-Fraud Ruling Is Pertinent and Defeats Summary Judgment for ORT. ....................................17

2. The Bankruptcy Court Should Have Granted Summary Judgment for Appellant – Not ORT. ........................................19

3. Material Disputed Facts Precluded the Bankruptcy Court from Finding a Legitimate Purpose as a Matter of Law ....................................................................................20

II. The Bankruptcy Court Erred in Granting ATFS Judgment on the Successor Liability Claim. ...........................................................22

A. Disputed Facts Exist Regarding the Continuity of Assets and Operations. ....................................................................23

B. Appellees Conflate Common Ownership with Identical Ownership. ....................................................................24

C. Appellees Invite the Court to Improperly Elevate Formal Dissolution to a Threshold Factor. ....................................25

D. ATFS Assumed Debtor's Lease Liability. ...........................................26

III. The Bankruptcy Court Erred in Granting ORH and ORC Judgment on the Alter-Ego Claim ..............................................................27

A. Factual Disputes Preclude Summary Judgment on the "Improper Use" Prong ..................................................27

B. Factual Disputes Regarding Harm to Debtor's Creditors Preclude Summary Judgment ..............................................28

CONCLUSION ....................................................................................29

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ....................................31

CERTIFICATE OF SERVICE ....................................................................32

ii

24010780v.6

iii

# Table of Authorities

## Cases

*Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145 (Fla. 4th DCA 1994) .............24

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................... 19, 27, 28

*Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610 (11th Cir. 2008) ..........................................................................................25

*Coral Windows Bahamas, LTD v. Pande Pane, LLC*, 2013 WL 321584 (S.D. Fla. Jan. 28, 2013) ...........................................................................24

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ..................10

*Eckhardt v. United States*, 463 F. App'x 852 (11th Cir. 2012) ...............................18

*Gary Brown & Associates, Inc. v. Ashdon, Inc.*, 2006 WL 8435164 (S.D. Fla. 2006) ..............................................................................................22

*General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485 (11th Cir. 1997)......................................................................................14

*Harbaugh v. Greslin*, 436 F. Supp. 2d 1315 (S.D. Fla. 2006)................................28

*In re 3M Combat Arms Earplug Products Liability Litigation*, 2021 WL 4132269 (N.D. Fla. Sept. 12, 2021) .......................................................8

*In re Comprehensive Power, Inc.*, 578 B.R. 14 (Bankr. D. Mass. 2017)...............24

*In re Direct Access Partners, LLC*, 602 B.R. 495 (Bankr. S.D.N.Y. 2019)...........15

*In re Dual D Health Care Operations, Inc.*, 2021 WL 3083344 (Bankr. N.D. Tex. July 21, 2021).....................................................................19

*In re Equifax Inc. Customer Data Security Breach Litigation*, 999 F.3d 1247 (11th Cir. 2021)...........................................................................7

*In re Equipment Acquisition Resources, Inc.*, 481 B.R. 433 (Bankr. N.D. Ill. 2012).................................................................................19

iv

*In re Florida Fund of Coral Gables, Ltd.*, 144 F. App'x 72 (11th Cir. 2005) ........18

*In re Hirshauer*, 2011 WL1135100 (M.D. Fla. Mar. 28, 2011) .............................15

*In re Levine*, 134 F.3d 1046 (11th Cir. 1998) ...........................................................14

*In re Paul C. Larsen, P.A.*, 610 B.R. 684 (Bankr. M.D. Fla. 2019) ........................28

*In re Schohl*, 2006 WL 753096 (N.D. Ohio Mar. 22, 2006) ...................................21

*Knapp v. North American Rockwell Corp.*, 506 F.2d 361 (3d Cir. 1974)...............24

*Kohn v. McGuire Woods LLP*, 2012 WL 12903098 (D.N.J. 2012) .......................17

*Luczak v. National Beverage Corp.* 812 F. App'x 915 (11th Cir. 2020) ...............25

*Maiz v. Virani*, 253 F.3d 641 (11th Cir. 2001) ......................................................10

*Midamerica C2L Inc. v. Siemens Energy, Inc.*, 2019 WL 7423523 (M.D. Fla. June 7, 2019) ....................................................................................................8

*Murphy v. Blackjet, Inc.*, 2016 WL 3017224 (S.D. Fla. May 26, 2016) .......... 22, 23

*Segal v. Forastero, Inc.*, 322 So. 3d 159 (Fla. 3d DCA 2021) ...............................28

*Sound Foundation v. SCI Fund II, LLC*, 2023 WL 2140132 (D. Or. Feb. 17, 2023)...............................................................................................................21

*Triant v. American Medical Systems Inc.*, 2020 WL 4049844 (D. Ariz. July 20, 2020) ............................................................................................................10

*United States v. Fisher*, 289 F.3d 1329 (11th Cir. 2002)........................................16

*United States v. Silva*, 443 F.3d 795 (11th Cir. 2006) .............................................16

*W.P. Productions, Inc. v. Tramontina U.S.A., Inc.*, 2021 WL 7368584 (S.D. Fla. Dec. 15, 2021).....................................................................................28

**Statutes**

12 U.S.C. §1821 .......................................................................................................15

Fla. Stat. §726.105 ...................................................................................................14

v

Fla. Stat. ch. 631.................................................................................20

## Rules

Federal Rule of Civil Procedure 26 ..........................................................8

Federal Rule of Civil Procedure 56 ........................................................14

Federal Rule of Evidence 702................................................... 6, 7, 9, 10

Federal Rule of Evidence 801 ................................................................20

## Other Authorities

Black's Law Dictionary ...........................................................................18

Restatement (Second) of Contracts § 160...............................................18

<div align="center">PRELIMINARY STATEMENT</div>

Rather than address the issues raised by Appellant, the Opposition[1] sets up straw men to defend what the bankruptcy court **could** have done but chose not to. The dodges underscore the errors. Appellant submits this reply, taking in turn the topics Appellees have raised.

### Judgment in ORT's Favor Was Error.

First, Appellees have ignored that the bankruptcy court decided that Pfeiffer could testify under 702 before it, *sua sponte*, excluded his testimony after trial without notice. Appellees have no answer for the bankruptcy court violating Appellant's due process rights. It is irrelevant that the bankruptcy court **could** have deemed Pfeiffer not credible and **could** have afforded his testimony no weight. The bankruptcy court did not do that. Instead, the bankruptcy court excluded Pfeiffer under Rule 702. It is also irrelevant that the bankruptcy court noted at the *Daubert* hearing that Hazel's rebuttal testimony could help evaluate Pfeiffer. The written order controls, which stated Pfeiffer could testify. If the bankruptcy court wanted to permit Appellees to reargue their *Daubert* motion at trial, it would have written that. Appellees' argument also only invites more error because the bankruptcy court

---

[1] Capitalized terms have the meanings ascribed to them in Appellant's Opening Brief ("Brief") and Appellees' Opposition ("Opposition"). Citations to the record follow the format used in the Brief. Citations to the Brief ("Br.") and Opposition ("Opp.") will be to the file-stamped page number.

<div align="center">1</div>

cannot consider Hazel's rebuttal testimony to decide whether Pfeiffer's testimony was admissible. Hazel's testimony is only relevant in evaluating the weight to grant Pfeiffer. If Pfeiffer is inadmissible, so is Hazel.

Second, it makes no difference that Pfeiffer did not identify each intangible asset's value. Pfeiffer testified that the value comes not from any individual asset but rather from the whole package; values in the aggregate are greater than individual. The undisputed evidence showed the Title Plant's value fell somewhere between $10,700,000 (the stipulated Title Plant book value) and $30,000,000 (Pfeiffer's conservative market value).

Third, Appellant argued it was entitled to the Title Plant's full value. Appellees – not Appellant – injected the argument that value was contingent. By raising the issue, Appellees bore the burden to prove the discount for the contingency. Shifting the burden to Appellant was error.

Fourth, Appellees fail to justify denying the 15(b) Motion. Appellees cannot establish the evidence is insufficient to prove a mediate transferee because the bankruptcy court deferred admitting relevant evidence until a later time. That time never came. Additionally, Appellees' statute of limitations argument asks the Court to ignore the FDIC Extender Statute's plain language and instead focus on its intent. That is contrary to the canons of statutory interpretation.

24010780v.6

Finally, the bankruptcy court should have granted summary judgment in Appellant's favor. The crime-fraud ruling held that Appellant established a *prima facie* case for fraudulent intent. The bankruptcy court reversed that decision, without explanation, after Appellant presented **more undisputed facts proving the badges of fraud**. The undisputed facts establish that ORT was Debtor's insider and the parties concealed the Master Agreement. When combined with the other undisputed badges of fraud, fraudulent intent existed. Appellees' legitimate purpose argument does not supersede that conclusion, which, at best, raises disputed facts. If the bankruptcy court wanted to reverse course, then it should have conducted a trial on those facts.

### **ATFS Was Not Entitled to Summary Judgment on Successor Liability.**

The parties dispute whether transferred assets – the Title Plant, IP, and Debtor's workforce, furniture, and equipment – were necessary for Debtor to perform its functions. The parties further dispute what comprised Debtor's primary business. These disputed material facts precluded summary judgment.

Appellees also attempt to heighten Appellant's burden by arguing there must be identical ownership rather than common ownership. That is not the standard. Appellant provided record evidence to support common ownership. Deciding whether that evidence is sufficient is a material issue of fact, not proper for the bankruptcy court to decide on summary judgment.

Appellees next contend formal dissolution is necessary for successor liability. But case law recognizes that dissolution does not have to happen at the same time as the other factors. Dissolution is one from many "indicia of commonality." A trial should determine whether Debtor's process for winding itself down and dissolving was sufficient.

Appellees do not dispute ATFS assumed Debtor's leases. Rather, Appellees argue the leases do not matter because those liabilities were small compared to the title policy limits. Not only is there no legal authority to support that argument, but Appellees fail to establish why it makes sense to compare the lease liability to the title policy liabilities assumed by ORT. Appellees' materiality argument shows summary judgment in Appellees' favor was error because materiality is a mixed question of law and fact the factfinder must resolve.

### Genuine Issues of Fact Exist Regarding the Alter-Ego Claim.

Appellees attempt to argue there are no facts in dispute about how ORH and ORC used ATFS. Undisputed is that ATFS (1) did not attend to its own financial affairs, (2) misstated facts about its ownership, (3) comingled funds with ORT, (4) had no actual employees because they were ORT employees, and (5) failed to observe corporate formalities. Appellees contend those facts do not show improper purpose. But deciding how the competing evidence fits with the alter ego standards

4

requires a trial. The bankruptcy court's decision to rule without a trial, and without construing the inferences in Appellant's favor, was error.

Appellees also attempt to avoid liability by pushing the argument that ATFS' corporate form did not harm Debtor's creditors because the CPL claims that injured creditors predate ATFS. But the evidence Appellant submitted was sufficient for a reasonable factfinder to conclude otherwise – that ORH and ORC used ATFS' corporate form to prevent Debtor's creditors from recovering their debts from ATFS. The facts in the record show (1) ORH and ORC "played a little loose" with who owned the joint venture; (2) ORT manipulated ATFS' revenues to avoid it generating profits; and (3) ORH and ORC called Debtor's Class B Units in ATFS and then gutted all its value to ensure Debtor's creditors could not recover from Debtor's successor. These facts, when construed in Appellant's favor, allow a reasonable factfinder to conclude that ORH and ORC injured Debtor's creditors. The nexus between this conduct on the one hand and the harm to creditors on the other is not attenuated. Granting summary judgment in Appellees' favor was error.

5

<div align="center">

ARGUMENT

</div>

**I.     The Bankruptcy Court Erred in Granting Judgment to ORT.**

**A.     The Bankruptcy Court's Pfeiffer-Related Rulings Were Incorrect and an Abuse of Discretion.**

1.     Appellees Conflate Reliability (and thus Admissibility) with Credibility.

The bankruptcy court recognized Pfeiffer "has years of experience in the valuation field and appears to have the 'specialized knowledge' that would help the Court 'to understand the evidence or to determine a fact in issue,'" yet still excluded Pfeiffer's testimony under 702(c). [ECF3-349:27.] Appellees argue this was proper because the bankruptcy court had "broad discretion to give testimony little or no weight." Opp. at 38. This argument (and cited case law) skips past what happened. The bankruptcy court did not weigh the opinions, deciding not to judge Pfeiffer's credibility but instead exclude him under 702(c) because he did not refer to textbooks and treatises. [ECF3-349:27-28.] This was error. Parts I.A.2-3, *infra*; Br. at 40-49. Appellees' attempt to reimagine the REV Order as a credibility finding rather than a 702 decision suffers from infirmities similar to those plaguing the arguments Appellees made at trial that invited the error.

2.     The Bankruptcy Court Failed to Give Notice It Was Reconsidering Its *Daubert* Ruling.

Appellees do not dispute that the bankruptcy court's pretrial *Daubert* order permitted Pfeiffer to testify. Nor could they, since the *Daubert* order expressly stated

<div align="center">

6

</div>

that "Pfeiffer **is not precluded** from testifying regarding the value of the Title Plant or the value of Debtor's intangible assets" and his "opinion of reasonably equivalent value **is admissible** to the extent it does not rely on the value of the Option to Re-Emerge." [ECF3-275:2-3¶¶5,7 (emphasis added).] Nor can Appellees identify any point during the REV Trial where the bankruptcy court notified Appellant it was reconsidering its *Daubert* ruling. Rather, Appellees attempt to overcome the bankruptcy court's failure to notify Appellant by urging the Court to pretend the *Daubert* order left open whether Pfeiffer had the qualifications to testify. To do so, Appellees cling to the bankruptcy court's oral statements during the *Daubert* hearing that Hazel's testimony will help evaluate Pfeiffer. [ECF3-278:13:7-10.] But the bankruptcy court's oral statements are irrelevant. "[T]he written order . . . controls in civil cases." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1269 n.16 (11th Cir. 2021). And as detailed above, the written order ruled that Pfeiffer could testify.[2]

Moreover, if the Court did use Hazel to analyze Pfeiffer's qualifications under 702(c), as Appellees contend (Opp. at 24-25), that would be another error by the bankruptcy court. Hazel was a rebuttal expert, so his testimony was admissible

---

[2] The Pfeiffer order did not contain a statement that "the reasons stated on the record [] shall constitute the findings of the Court." [*Compare* ECF 3-281:2 *with* ECF3-275:2.]

"solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii); [ECF3-278:11:10-24]. If Pfeiffer's testimony was inadmissible, then so was Hazel's. *See, e.g.*, *Midamerica C2L Inc. v. Siemens Energy, Inc.*, 2019 WL 7423523, at *5 (M.D. Fla. June 7, 2019) (denying motion to exclude rebuttal expert as moot because primary expert was excluded so there was "nothing to rebut"); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 4132269, at *6 n.28 (N.D. Fla. Sept. 12, 2021) (same). The bankruptcy court could not use Hazel's rebuttal to exclude Pfeiffer's opinions.

Finally, Appellees argue Appellant "does not explain how he would have cured the defects in his testimony." Opp. at 33. One need look no further than the opening brief (at 24, 42) but can also find the answer in the response to the *Daubert* motion [*see generally* ECF3-269] and at every step in between. Had Appellant known the bankruptcy court was reconsidering its *Daubert* ruling on Pfeiffer, the testimony would have emphasized the points made at Pfeiffer's deposition and in opposition to Appellees' *Daubert* motion. Br. at 24, 42. But since Appellant did not know Pfeiffer's qualifications and admissibility were still at issue, he chose to streamline the testimony and omit unnecessary background.[3]

---

[3] Appellees argue Appellant "could not" have added anything at trial to support Pfeiffer's qualifications because "expert discovery had closed." Opp. at 33. This works both ways. With the record closed and all relevant information already before

Without notice to Appellant, the bankruptcy court *sua sponte* reconsidered its *Daubert* order after trial and excluded Appellant's most important witness. This deprived Appellant of due process, and Appellees' arguments to the contrary do not alter that conclusion.

3.    <u>Pfeiffer Is Qualified to Provide Expert Testimony Under 702</u>.

Appellees contend Pfeiffer's opinion was not the product of reliable methodologies. Opp. at 33-36. As outlined in his Brief (at 42, 44-49), Appellant disagrees and is not going to repeat those arguments here. Suffice it to say, every argument Appellees offer was raised in Appellees' *Daubert* motion ***and rejected by the bankruptcy court in the Daubert order*** when the bankruptcy court ruled Pfeiffer could testify. [*See generally* Bankr.ECF301; ECF3-275:2-3.] The criticisms lodged by Appellees[4] are Hazel's words – not the bankruptcy court's. [ECF3-349:25-27.] The bankruptcy court did not rely on any of these supposed "flaws" in its reconsideration of Pfeiffer's admissibility in the REV Order. Weighing Hazel's testimony against Pfeiffer's testimony does not decide admissibility. And the

---

the bankruptcy court, there was no basis for the bankruptcy court to reconsider its *Daubert* ruling and *sua sponte* exclude Pfeiffer after trial.

[4] Appellees appear to conflate Pfeiffer's excluded "option to re-emerge" opinion with his admissible valuation opinion. *Compare* Opp. at 36 *with* [ECF3-275:2-3]. Having the capital to become an insurer does not change the intangible assets' value. Appellees cannot use the option to re-emerge to justify excluding Pfeiffer.

24010780v.6

bankruptcy court did not weigh credibility when it excluded Pfeiffer's opinions. Part I.A.1; Br. at 40-44.

Appellees also misunderstand Appellant's argument about Pfeiffer's credentials. Opp. at 36-37. Pfeiffer must satisfy 702(c), but the bankruptcy court's reliance on incanting published authorities is not what the Rule requires. As the cases cited by Appellant establish, an expert's professional study or personal experience can be sufficient to establish a reliable principle and method, regardless whether treatises and textbooks endorse it. *See Maiz v. Virani*, 253 F.3d 641, 669 (11th Cir. 2001); *Triant v. Am. Med. Sys., Inc.*, 2020 WL 4049844, at *13 (D. Ariz. July 20, 2020). Otherwise, methodologies would be stuck in time, unable to evolve as new, unique situations arise. *Daubert* does not inject that rigidity into the gatekeeper function. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 593-94 (1993) (explaining publication is "not dispositive" because "well-grounded but innovative theories will not have been published" and "[s]ome propositions . . . are too particular, too new, or of too limited interest to be published"). Pfeiffer's credentials, which the bankruptcy court lauded, endorsed, and accepted in its *Daubert* ruling [ECF3-349:27], qualified him to devise a method to value the unique assets at issue.

Under a proper reading of 702, *Daubert*, and its progeny, reference to textbooks and treatises was unnecessary, and the bankruptcy court's decision to exclude Pfeiffer because he did not cite specific texts was an abuse of discretion.

4.   The Bankruptcy Court Erred in Determining Appellant Failed to Establish the Value of the Intangible Assets.

Appellees also argue that excluding Pfeiffer was harmless since "Appellant still failed to carry his burden to prove any value of intangible assets because Pfeiffer valued assets and rights that Debtor did not own as of December 2015." Opp. at 38.[5] First, Appellees argue there was no value to consider for the IP because Debtor did not own it (Opp. at 39), but Appellant sought to avoid the IP transfer to the Trust; thwarted when the bankruptcy court prevented Appellant from putting on evidence until "down the road." Br. at 27-29, 54; Part I.C.1, *infra*; [ECF3-342:99:7-103:11]. The opportunity never materialized once the bankruptcy court entered summary judgment for Appellees, effectively preventing Appellant from presenting relevant, material evidence. Second, Appellees urge the Court that Appellant failed to prove the discounts to apply to the Title Plant and IP for the contingencies affecting their value. Opp. at 40. But it was error for the bankruptcy court to place that burden on

---

[5] Appellees point to "the testimony of Debtor's president," John Simmons. Opp. at 30. Simmons is the Trust's president, which receives $100,000 per year from ATFS. Simmons also serves on committees, lends his expertise to Appellees, and interacts with the trustees for Appellees. [ECF3-274:8¶146(a).]

11

Appellant because that burden falls on the party asserting the contingencies, *i.e.* Appellees. Br. at 49-52; Part I.B, *infra*. Third, Appellees argue the bankruptcy court correctly found Appellant should have provided a breakdown of each intangible assets' value, and Pfeiffer's "admission" that there "was no way to back out the value" was fatal. *See* Opp. at 39. But this heightened standard ignores Pfeiffer's opinion: the assets' value comes from "the fact that they are combined" and "[o]ne plus one is three and not two." [ECF3-344:202:16-18,203:3.]

By injecting these errors concerning the intangible assets, the bankruptcy court compounded the harm Appellant suffered when it excluded Pfeiffer, proving fatal.

* * * * *

The bankruptcy court made multiple errors in excluding Pfeiffer. Whether taken individually or collectively, these errors amount to an abuse of discretion mandating reversal.

## B. Proving the Contingency Discount Fell on ORT – Not Appellant.

Appellees argue that in the fraudulent transfer context, the burden to prove the contingent value of an asset is always on the debtor. Opp. at 40-41. But no cases cited by Appellees stand for that proposition. Rather, they stand for the unremarkable proposition that debtor has the initial burden of establishing value. Here, Debtor presented evidence of the Title Plant's value. Pfeiffer opined that the value – in its

12

entirety – was $30 million. [ECF3-342:149:18-158:9.] ATFS, meanwhile, stipulated that the book value of the Title Plant – again, in its entirety – was $10,700,000. [ECF3-342:28:6-18.] The only arguments related to a lesser value to the Title Plant based on so-called contingencies came *from Appellees*. [ECF3-340:21:7-26:17; ECF3-342:215:12-22.] Based on the case law cited by Appellant – which Appellees do not dispute – the burden was on Appellees to establish what that "contingency discount" was once Appellant established the value of the Title Plant ranged from ATFS' book value of $10,700,000 to Pfeiffer's conservative market value opinion of $30 million. They did not do so.

Appellees misapplied the law because they distort Appellant's argument concerning the Title Plant. Opp. at 42. Appellant has never argued the asset at issue was a "contingent right to the title plant." To the contrary, Appellant's argument is that Debtor held the right to a current copy of the updated title plant, and thus its *entire value*. [*See, e.g.*, ECF3-205:21-22; ECF3-248:11.] As noted above, the contingency issue only arose in *Appellees' defense*. [ECF3-340:21:7-26:17; ECF3-342:215:12-22.] Appellees, arguing for the contingency discount, bear the burden to prove the discount they injected into dispute.

13

**C.**    **The Bankruptcy Court Abused Its Discretion in Denying the 15(b) Motion.**

1.    <u>The Bankruptcy Court Erred When It Denied Appellant the Opportunity to Establish the IP Was Fraudulently Transferred.</u>

Appellees argue the 15(b) Motion is futile because "the Marks Assignment is not avoidable as a matter of law." Opp. at 44-46. But the record was incomplete because the bankruptcy court did not allow Appellant to submit his evidence that the mediate transfer of the IP was fraudulent. The bankruptcy court deferred taking evidence on the issue until sometime "down the road." [ECF3-342:99:7-103:11.] But that time never came. Without a complete record, the bankruptcy court could not properly decide whether the transfer was fraudulent.[6] *Accord* Fed. R. Civ. P. 56(d) (encouraging courts to defer or deny summary judgment when facts are still outstanding).

For instance, Appellees argue that "further protect[ing] and insulat[ing] its intellectual property from the [Appellees]" is a legitimate purpose. *See* Opp. at 44. But Appellees provide no support for the statement. The only way to understand whether that stated intent is fraudulent or legitimate is through testimony and analyzing badges of fraud. *See, e.g., In re Levine*, 134 F.3d 1046, 1053 (11th Cir.

---

[6] Given the bankruptcy court's ruling on the IP was essential to the REV Order, which in turn formed the basis of the summary judgment decision on the Master Agreement, it is circular to conclude the 15(b) Motion was futile because the bankruptcy court concluded the Master Agreement was not a fraudulent transfer.

14

1998); *Gen. Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1498-99 (11th Cir. 1997); Fla. Stat. §726.105(2).

Appellees are also wrong to argue reasonably equivalent value for a transfer between subsidiary and parent is irrelevant. Opp. at 45. The cases cited by Appellees do not stand for the broad proposition that a transfer from subsidiary to parent for no consideration is never fraudulent. *In re Hirshauer* did not involve a parent-subsidiary relationship; rather, the transfer of property reflected a "long-standing family plan." 2011 WL1135100, at *3 (M.D. Fla. Mar. 28, 2011). In *In re Direct Access Partners, LLC*, the transfers at issue were dividends. 602 B.R. 495, 545 (Bankr. S.D.N.Y. 2019). The case stands for the unsurprising proposition that not "every dividend is made with fraudulent intent." *Id.* The court recognized any transfer without consideration – including dividends – "may be a sign of fraudulent intent" and thus it is necessary to evaluate the evidence surrounding each transfer. *Id.* Here, the transfer from Debtor to the Trust was not a dividend, but rather an attempt to hide and conceal assets from Appellees. [ECF3-272:8¶¶68-69; ECF3-10:38-40¶¶127,130; ECF3-274:5¶129.] That is the hallmark underlying fraudulent transfer law.

Context matters in evaluating whether the "lack of reasonably equivalent value" indicates fraudulent intent. Here, it was. At the very least, it created a factual dispute precluding a finding that the transfer was ***not*** fraudulent.

> 2.    Appellees Ask This Court to Ignore the FDIC Extender Statute's Plain Language.

Appellees also argue Appellant's attempt to avoid the IP transfer is outside the statute of limitations, and thus time barred. Opp. at 46-49. Yet Appellees acknowledge that, under the plain language of the FDIC's Extender Statute, the statute of limitations begins to run on "the later of – (i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues." 12 U.S.C. §1821(d)(14)(B). Appellees' only argument for untimeliness is that the Court should disregard the statute's plain meaning in favor of its intent. Opp. at 46-48. But it is a basic tenet of statutory construction to give statutes their plain and ordinary meaning. *United States v. Silva*, 443 F.3d 795, 797-98 (11th Cir. 2006). "The plain language is presumed to express congressional intent and will control a court's interpretation." *United States v. Fisher*, 289 F.3d 1329, 1338 (11th Cir. 2002). Twisting the statute to obtain a policy objective – which is what Appellees are asking this Court to do – is contrary to statutory construction and improper.

D.    **The Bankruptcy Court Erred in Granting ORT Summary Judgment on the Fraudulent Transfer Claims.**

    1.    <u>The Crime-Fraud Ruling Is Pertinent and Defeats Summary Judgment for ORT</u>.

Appellees continue to try to distance themselves from the bankruptcy court's crime-fraud ruling. This time, Appellees argue it is "irrelevant" because it is a "discovery ruling." Opp. at 61-62. But that argument misunderstands the crime-fraud ruling, which required the bankruptcy court to engage in a substantive analysis rather than evaluating a discovery issue. The bankruptcy court detailed the requirements and elements of a fraudulent transfer before deciding that "Plaintiff has shown a *prima facie* case of OR Title's fraudulent conduct in connection with the allegedly fraudulent transfers, ***and that applies to both OR Title*** and OR Holding in this case." [ECF3-12:13:23-14:1 (emphasis added).] In coming to this conclusion, the bankruptcy court rejected Appellees' argument (which they raise again here) that, as transferees, ORT's intent was irrelevant; the evidence showed that ORT and Debtor worked together over the years to accomplish this fraudulent transfer. [ECF3-12:14:12-15:12.] Only after the bankruptcy court made its substantive findings did it move on to the discovery issue, where it held that Carlton Fields' communications with ORT were discoverable under the crime-fraud exception and needed to be produced. [ECF3-12:14:2-11.]

17

These facts and rulings are different from those in *Kohn v. McGuire Woods LLP*, 2012 WL 12903098, at *12 (D.N.J. 2012), cited by Appellees. There, the magistrate judge used the "New Jersey Uniform Fraudulent Transfer Act as an analytical tool" to determine privilege issues under the crime-fraud exception. 2012 WL 12903098, at *12 (D.N.J. 2012). The magistrate judge did not make substantive rulings. *See id.*

Appellant does not argue he is entitled to summary judgment **because** of the crime-fraud ruling. Br. at 56-57. Rather, the crime-fraud ruling is relevant to show the bankruptcy court's inconsistencies and ultimate error in holding that ORT was entitled to summary judgment because Appellant failed to meet his burden with respect to certain badges of fraud. *See id*. It is contradictory for the bankruptcy court to hold, for example, that Appellant satisfied his *prima facie* burden to establish the concealment badge of fraud as part of the crime-fraud ruling but that he failed to meet that same burden under the summary judgment standard when the same (if not more) evidence was before the bankruptcy court.[7] *Compare* [ECF:3-12:13:8-14]

---

[7] The record contained undisputed facts on the insider badge of fraud that could lead a factfinder to conclude the relationship between ORT and Debtor was closer than ordinary business partners, triggering "heavy scrutiny," and that the Master Agreement was not at arm's-length. Br. at 57-65; *see also* BLACK'S LAW DICTIONARY (defining concealment and arm's-length); Restatement (Second) of Contracts § 160 cmt. a (describing concealment); *In re Florida Fund of Coral Gables, Ltd.*, 144 F. App'x 72, 75 (11th Cir. 2005).

*with* [ECF3-10:82¶¶251-52,83¶254]. Appellees do not attempt to reconcile that contradiction because they cannot.

If the evidence was sufficient to satisfy Appellant's *prima facie* burden of establishing fraudulent intent, it was enough, at the very least, to defeat Appellees' motion for summary judgment and proceed to trial. This is especially true given the summary judgment requirement that all inferences and conclusions be drawn ***against*** ORT as the moving party. *See Eckhardt v. United States*, 463 F. App'x 852, 855 (11th Cir. 2012).

> 2.  The Bankruptcy Court Should Have Granted Summary Judgment for Appellant – Not ORT.

Appellant has submitted undisputed facts showing the Master Agreement's concealment and the close, insider relationship between ORT and Debtor. Br. at 57-65. Appellees quibble with some citations, but they do not dispute the facts. Opp. at 51-59. Nor do Appellees provide additional or contrary facts. *Id.* Rather, Appellees contend the facts used by Appellant do not establish concealment or insider status. *See id.* Appellant disagrees for the reasons outlined in the Brief (at 57-65), incorporated here, and is not going to burden the Court by repeating them. The facts and law cited by Appellant are enough to conclude, as a matter of law, that the concealment and insider badges of fraud exist on this record. And combining those two badges of fraud with the three additional undisputed badges of fraud favoring

Appellant – (1) the Master Agreement transferred substantially all Debtor's assets; (2) Debtor had been sued or threatened with suit before the Master Agreement; and (3) Debtor was insolvent or became insolvent because of the Master Agreement [ECF3-355:41] – the bankruptcy court erred in denying Appellant's motion for summary judgment.[8]

### 3. Material Disputed Facts Precluded the Bankruptcy Court from Finding a Legitimate Purpose as a Matter of Law.

Appellees next argue the bankruptcy court did not err when it held that ORT had a legitimate purpose for the fraudulent transfer. Opp. at 59-61. Appellant submitted facts in dispute that are material and genuine. Br. at 54-55; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

First, Connor stated it was important to keep Debtor out of receivership and instead enter into the Master Agreement for Appellees to maintain control over the IP. [ECF3-10:50¶165.] To achieve that result, Conner asked Debtor's board to "take one for the team." [ECF3-10:50¶166.] This alone casts doubt on Appellees' true motives and would allow a factfinder to rule for Debtor. Appellees do not dispute these statements and instead ask the Court to disregard them as "inadmissible

---

[8] If the Court reverses the REV Order, it would also have to reverse summary judgment because Appellees recognize "reasonably equivalent value is a key factor in the badges of fraud analysis." Opp. at 59; *see also In re Dual D Health Care Operations, Inc.*, 2021 WL 3083344, at *8 (Bankr. N.D. Tex. July 21, 2021); *In re Equip. Acquisition Res., Inc.*, 481 B.R. 433, 440 (Bankr. N.D. Ill. 2012).

hearsay." Opp. at 60-61. But Conner was ORT's senior vice president and was presenting to Debtor's board *on behalf of ORT*. [ECF3-93:44:1-6.] He was an ORT agent – Appellant's party opponent – and his statements were statements by ORT showing ORT's intent. By definition, Conner's statements are not hearsay. Fed. R. Evid. 801(d)(2).

Second, Appellees contend the Master Agreement had a legitimate purpose because state officials from DFS and OIR testified they would prefer troubled insurance companies such as Debtor not enter receivership. Opp. at 60. But this conclusion – seemingly endorsed by the bankruptcy court – is not "undisputed" like Appellees claim. The Florida Legislature – not DFS and OIR – laid out a comprehensive statutory scheme detailing how best to resolve the financial distress of title insurers such as Debtor. *See* Fla. Stat. ch. 631. A factfinder could (and should) determine that the statutory scheme trumps an administrator's position – especially here, where the DFS and OIR officials' testimonies were in an individual capacity and not on behalf of DFS and OIR. [ECF3-343:98:7-100:10.] Any attempt to avoid the statutory requirements was illegitimate.

21

Both sides have presented evidence about the purpose behind the Master Agreement, and a reasonable factfinder could rule for either party.[9] The bankruptcy court skipped the necessary step of trying this issue and instead made a factual finding about legitimate purpose in its summary judgment decision. This was improper and constitutes error.

* * * * *

The record's undisputed facts entitled Appellant to summary judgment on his actual fraudulent transfer claims. At the very least, they precluded summary judgment in ORT's favor. Nothing argued by Appellees alters that conclusion.

## II.    The Bankruptcy Court Erred in Granting ATFS Judgment on the Successor Liability Claim.

The bankruptcy court granted summary judgment to ATFS after rejecting both the *de facto* merger and mere continuation theories for successor liability. But disputed facts could lead a reasonable factfinder to conclude ATFS and Debtor did not run their own race. Br. at 70-74.

---

[9] The cases Appellees relied on are inapposite. In *In re Schohl*, 2006 WL 753096, at *2-*4 (N.D. Ohio Mar. 22, 2006), there was no dispute the debtor's purpose was to pay rent when considering the sale of the home. There was also no dispute in *Sound Foundation v. SCI Fund II, LLC*, 2023 WL 2140132, at *8 (D. Or. Feb. 17, 2023), that the parties had a legitimate investment opportunity, and furthering that activity overcame the "timing" badge of fraud.

22

**A.    Disputed Facts Exist Regarding the Continuity of Assets and Operations.**

Appellees press that ATFS cannot be Debtor's successor because the assets and business operations are not the "same" since Debtor allegedly retained approximately $240 million and ATFS is not a title insurer. Opp. at 64. But Appellees' contention that the assets and business operations must be identical lacks legal support. The requirement is that the successor company "absorb" or "continue" the original company. *See Murphy v. Blackjet, Inc.*, 2016 WL 3017224, at *5 (S.D. Fla. May 26, 2016). Even the case relied on by Appellees, *Gary Brown & Associates, Inc. v. Ashdon, Inc.*, 2006 WL 8435164, at *2 (S.D. Fla. 2006), does not mandate identical or even the same assets. Rather, the assets transferred – and the identity of those assets – was one factor from several. *Id.*

Appellant argues the assets transferred to ATFS – the Title Plant, IP including the name "The Fund," and Debtor's workforce, furniture, and equipment [ECF3-27:3¶13; ECF3-272:6¶¶38-39,7¶56; ECF3-274:7¶142] – were necessary for Debtor to perform its functions. Br. at 71. Appellees contend these assets were not vital to Debtor's business; rather the $240 million on Debtor's balance sheet were. Opp. at 64-65. The parties further dispute what Debtor's "primary" business was.[10] *Compare*

---

[10] Debtor's standing in the title insurance industry says nothing about Debtor's primary business. A reasonable factfinder could conclude that title insurance was not Debtor's overall business.

23

Br. at 71-72 (citing [ECF3-10:21-22¶59; ECF3-146:52-53¶77; ECF3-272:7¶¶54-55]) *with* Opp. at 66. The dispute therefore involves material facts, plain and simple, precluding summary judgment.

### B.    Appellees Conflate Common Ownership with Identical Ownership.

Appellees misstate the standard for "continuity of ownership." Without citing any legal support, Appellees argue that because the Trust – Debtor's parent – now has an ownership interest in ATFS, there can be no continuity. Opp. at 67. But the standard is ***common*** ownership, not identical ownership. *See, e.g.*, *Murphy*, 2016 WL 3017224, at *4-*5. Appellant has provided record evidence to support common ownership because the Trust has always had an ownership interest in ATFS, first through Debtor as Debtor's parent and then as direct holder of ATFS' Class B units. Br. at 72-73 (citing [ECF3-10:22¶60,40¶129; ECF3-272:3¶8,11¶¶104-06]).

Appellees cite no legal support for their contention that Class B ownership does not count because Class B owners have no financial interest. Opp. at 67. Nor can they because ownership is ownership. Deciding whether evidence showing common ownership is sufficient is a material fact issue for trial – not proper for summary judgment.

24

**C.      Appellees Invite the Court to Improperly Elevate Formal Dissolution to a Threshold Factor.**

Appellees continue to argue that formal dissolution is necessary for successor liability. But the cases cited do not stand for that proposition. In *Amjad Munim, M.D., P.A. v. Azar*, the court stated that "dissolution[] need not occur at the same time" as other factors. 648 So. 2d 145, 154 (Fla. 4th DCA 1994). It relied on *Knapp v. North American Rockwell Corp.*, 506 F.2d 361, 367 (3d Cir. 1974), where dissolution did not happen until 18 months after the sale. *Id.* Similarly, *Coral Windows Bahamas, LTD v. Pande Pane, LLC*, 2013 WL 321584 (S.D. Fla. Jan. 28, 2013), did not "require" dissolution like Appellees argue. Opp. at 68. Rather, the court simply restated the factors outlined by *Amjad*. *See Coral Windows*, 2013 WL 321584, at *4. It then noted that dissolution "need not occur at the same time" and in fact did not occur until "[a]bout a year" after the sale. *Id.* at *4-*5. It is for trial – not summary judgment – to determine whether Debtor's process for winding itself down and eventual dissolution is sufficient, especially considering that it filed a Chapter 11 bankruptcy case.

In any event, Appellees' argument to elevate dissolution to a key factor Appellant must prove to prevail on his successor liability claim is flawed. As Appellees themselves note, the identified factors are "indicia of commonality." Opp. at 64. Indicia are ***examples*** – they are not requirements. The question is not whether

Appellant has checked off all the elements but whether Debtor became ATFS. *See, e.g.*, *In re Comprehensive Power, Inc.*, 578 B.R. 14, 35 n.14 (Bankr. D. Mass. 2017). There should be little doubt that occurred.

### D.    ATFS Assumed Debtor's Lease Liability.

Appellees do not dispute that ATFS assumed real property leases that ATFS used for its business operations. Opp. at 68. Rather, Appellees argue the assumption is immaterial given Debtor's title policy liabilities. *Id.* But Appellees provide no legal support that materiality is necessary or that the assumed liabilities are immaterial. There is also no reason to compare the leases assumed by ATFS to the title policy liability assumed *by ORT*. The argument thrusts Appellees into the quandary that materiality is also a "mixed question[] of law and fact that must typically be resolved by the fact finder." *Luczak v. Nat'l Beverage Corp.* 812 F. App'x 915, 924 (11th Cir. 2020).

\* \* \* \* \*

The "bottom-line question is whether each entity has run its own race, or whether[] there has been a relay-style passing of the baton from one to the other" such that Debtor has become ATFS. *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 F. App'x 610, 614 (11th Cir. 2008). Numerous outstanding factual issues precluded the bankruptcy court from making this determination, and thus the bankruptcy court erred by granting ATFS summary judgment.

26

## III.   The Bankruptcy Court Erred in Granting ORH and ORC Judgment on the Alter-Ego Claim.

The bankruptcy court erroneously granted summary judgment to ORH and ORC after deciding factual issues and concluding ORH and ORC were not ATFS' alter-ego.

### A.   Factual Disputes Preclude Summary Judgment on the "Improper Use" Prong.

Appellees' attempt to argue there are no facts in dispute (Opp. at 71-73) fails considering several issues highlighted by the parties. For instance, Appellees do not dispute ATFS failed to calculate service fees, ATFS' tax returns improperly reported ORH's share of the profit of 100%, and all of ATFS' employees became ORT employees in 2017. *Id.* Rather, Appellees claim these facts do not show improper use because they occurred under agreements between ATFS, ORT, ORH, and ORC. *Id.* Even assuming the excuse offered is true, it does not "debunk" the facts Appellant submitted. Appellees declaring there was no improper use when faced with these facts should, at a minimum, show there exist disputes for trial: evaluating whether ORH and ORC properly used ATFS. When compounded with the facts showing ATFS commingled funds with ORT and failed to observe corporate formalities,[11]

---

[11] Appellees miss the point because Appellant does not suggest ATFS' failure to honor corporate formality is the reason ATFS is ORH's and ORC's alter-ego. It is a factor for consideration at trial. Br. at 76-77.

Br. at 76-77, there was enough evidence for a reasonable factfinder to conclude ORH and ORC improperly used ATFS. The bankruptcy court's decision to rule without a trial, and without construing the facts in Appellant's favor, is reversible error. *See Anderson*, 477 U.S. at 248, 252.

**B.    Factual Disputes Regarding Harm to Debtor's Creditors Preclude Summary Judgment.**

Appellees argue that ATFS' corporate form did not injure Debtor's creditors because the CPL claims that harmed creditors predate ATFS. Opp. at 74-75. This argument misses the point: Appellant's claim is ATFS, as Debtor's successor, is liable for Debtor's debts (Br. at 78; Part II, *supra*) and there is sufficient evidence to conclude that ORH and ORC used ATFS' corporate form to prevent Debtor's creditors from recovering from ATFS. Therefore, ORH's and ORC's actions caused Debtor's creditors harm. The evidence includes the fact that ORH and ORC "played a little loose[] with the members of the joint venture." [ECF3-137:2.] ORH and ORC also manipulated ATFS' revenues to ensure it would not be profitable. [ECF3-146:68-70¶97.] And when ORH and ORC called Debtor's Class B Units in ATFS and then gutted all value from ATFS [ECF3-272:11¶¶104,105,108; ECF3-10:68¶¶208-10,71¶221,96-97¶¶289-90,98¶¶293-94], they ensured Debtor's creditors could no longer recover from Debtor's successor. When construed in

Appellant's favor, a reasonable factfinder could determine ORH and ORC caused injury to Debtor's creditors.

The cases cited by Appellees – *W.P. Productions, Inc. v. Tramontina U.S.A., Inc.*, 2021 WL 7368584 (S.D. Fla. Dec. 15, 2021); *Harbaugh v. Greslin*, 436 F. Supp. 2d 1315 (S.D. Fla. 2006); *In re Paul C. Larsen, P.A.*, 610 B.R. 684 (Bankr. M.D. Fla. 2019); and *Segal v. Forastero, Inc.*, 322 So. 3d 159 (Fla. 3d DCA 2021) – are inapposite. Each involved a run-of-the-mill veil-piercing claim where the alleged harm to creditors was too attenuated to satisfy the nexus requirement. Here, by contrast, Appellant's alter-ego claim turns on its successor liability claim, and a reasonable factfinder could conclude that ORH's and ORC's actions directly caused creditors' injuries, *i.e.*, the inability to collect against Debtor through its successor-in-interest, ATFS. The nexus here is not as attenuated as the ones addressed in the cases cited by Appellees.

Granting summary judgment in ORH's and ORC's favor was error. *See Anderson*, 477 U.S. at 248, 252.

## CONCLUSION

Based on the above, as well as the arguments raised in the Brief, Appellant respectfully requests the Court enter an order:

1.  Reversing final judgment in Appellees' favor;

24010780v.6

2.  Remanding to the bankruptcy court for a new trial on all claims, including reasonably equivalent value;

    and

3.  Granting further relief the Court deems just and proper.

Dated: October 5, 2023

<div style="margin-left:auto">

Respectfully submitted,

BECKER & POLIAKOFF, P.A.
*Attorneys for Appellant Daniel J. Stermer, as Creditor Trustee*
1 East Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
Telephone: (954) 987-7550
Facsimile: (954) 985-4176
JPolenberg@beckerlawyers.com
DGoldman@beckerlawyers.com
TFritz@beckerlawyers.com

By: */s/ Jon Polenberg*
    Jon Polenberg, Esq.
    Florida Bar No. 653306
    Darren Goldman, Esq.
    Florida Bar No. 88638

</div>

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

I certify that this document complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 6,438 words.

I further certify that this document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point font Times New Roman.

By: */s/ Jon Polenberg*
    Jon Polenberg, Esq.
    Florida Bar Number 653306

24010780v.6

**CERTIFICATE OF SERVICE**

I certify that on October 5, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served on this day on all counsel of record via the Court's CM/ECF Notice of Docket Activity.

By: */s/ Jon Polenberg*
Jon Polenberg, Esq.
Florida Bar Number 653306

32